**BUILDEX INCORPORATED,**
Plaintiff–Appellee,

v.

**KASON INDUSTRIES, INC.,**
Defendant–Appellant.

Appeal No. 87–1483.

United States Court of Appeals,
Federal Circuit.

June 23, 1988.

Mark H. Sparrow, Jacobs & Jacobs, P.C., New York City, argued, for plaintiff-appellee. With him on the brief were Jesse D. Reingold and Stephen M. Haracz.

Paul J. Sutton, Sutton, Magidoff & Amaral, New York City, argued, for defendant-appellant. With him on the brief was Anthony Amaral, Jr.

Before RICH, SMITH, and NIES, Circuit Judges.

RICH, Circuit Judge.

Kason Industries, Inc. (Kason) appeals from the May 27, 1987, judgment of the United States District Court for the Eastern District of New York, 665 F.Supp. 1021, 4 USPQ2d 1803 (E.D.N.Y.1987), and the subsequent order of June 30, 1987, denying Kason's motion for relief from the judgment, *id.* 665 F.Supp. at 1030, holding that Kason infringed Buildex Inc.'s (Buildex) patent No. 4,150,265 ('265 patent) for a "Hinge Activated Switch" and rejecting all of Kason's defenses attacking the validity of the patent including failure to name a joint inventor, the "on sale" bar of 35 U.S. C. § 102(b), obviousness under 35 U.S.C.

§ 103, failure to disclose the best mode under 35 U.S.C. § 112, patent misuse, and inequitable conduct. We reverse the part of the judgment holding that the patent is not invalid because of the § 102(b) "on sale" bar and remand.

## Background

The '265 patent is for a self-closing, cam-lift hinge having a concealed light switch within the body of the hinge. The hinge is designed for use on the doors of refrigerators used in the food service industry. The application for the patent was filed on March 14, 1977, and the patent issued on April 17, 1979.

Standard–Keil Hardware Mfg. Co. (S–K) is a division of Buildex. S–K manufactures and sells hardware components for the food service industry. Traulsen & Co. (Traulsen) manufactures refrigerators and is a leading customer of S–K.

In 1975, Traulsen's Vice President of Manufacturing, Erich Maier, met with three S–K employees, including the named inventor of the '265 patent, Dermot Holden. Maier asked the S–K employees if it would be possible to incorporate a light switch into their cam-lift hinge. Holden and S–K's engineers worked on the problem and came up with the hinge described in the '265 patent.

Holden showed representatives of Traulsen a working model of the hinge in October, 1975, about five months before the critical date of March 14, 1976. At a later meeting, Ed Czerniawski, a purchasing agent at Traulsen, discussed with a representative of S–K the terms on which S–K would sell the hinge to Traulsen. In a Traulsen internal memorandum dated October 21, 1975, Czerniawski reported the substance of the discussion to Maier which included an estimated cost of $2.80 per unit. A "Quotation" dated November 3, 1975, from Irving Brown, Sales Manager of S–K, to Czerniawski, was also produced from Traulsen's corporate files. The quotation bears the notation "Terms of Sale" and lists a quantity of 50,000 pieces at a price of $2.84 each.

S–K agreed with Traulsen to file a patent application on the hinge and to sell the hinge exclusively to Traulsen. Traulsen in turn agreed to pay for certain tooling expenses incurred by S–K and to use the hinge for its own use exclusively.

Kason appeals from the judgment with respect to the "on sale" bar, best mode, and inequitable conduct, and asks that we remand the case for determination of its entitlement to attorney fees under 35 U.S.C. § 285. Because we reverse the part of the judgment holding that the patent is not invalid under § 102(b), we need not consider the best mode issue. We remand the case, however, for a redetermination of inequitable conduct and for consideration of Kason's request for attorney fees.

## OPINION

### A. "On Sale" Bar

■ An inventor loses his right to a patent if he has placed his invention "on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). The defendant, Kason, had the burden of proving that there was a definite sale *or offer to sell* more than one year before the application for the patent. *See UMC Elecs. Co. v. United States,* 816 F.2d 647, 656, 2 USPQ2d 1465, 1472 (Fed.Cir.1987), *cert. denied,* 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). *See generally* R. Harmon, *Patents and the Federal Circuit* § 3.4(c) (1988). The issue here is whether the district court correctly determined that Kason had not met that challenge.

The district court found that Kason failed to demonstrate by clear and convincing evidence that S–K offered the hinge for sale before March 14, 1976. Although the issue of whether an invention is "on sale" is ultimately a question of law, *UMC,* 816 F.2d at 657, 2 USPQ2d at 1472, the court's decision in this case turns in part on disputed facts, namely what S–K did by way of an offer to sell the hinge to Traulsen before the critical date.

### 1. "Clear and Convincing" Evidence of the Offer for Sale

█ Under 35 U.S.C. § 282, a patent is presumed valid, and an attack on its validity requires proof of facts by "clear and convincing evidence or its equivalent, by whatever form of words it may be expressed." *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The "clear and convincing" standard of proof of facts is an intermediate standard which lies somewhere between "beyond a reasonable doubt" and a "preponderance of the evidence." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed. 2d 323 (1979); *see also SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 380, 218 USPQ 678, 691 (Fed.Cir. 1983) (Nies, J., additional views). Although not susceptible to precise definition, "clear and convincing" evidence has been described as evidence which produces in the mind of the trier of fact "an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 2437–38, 81 L.Ed.2d 247 (1984); *see also* C. McCormick, *Evidence* § 340, at 796 (2d ed. 1972).

█ The district court found that "the available and credible evidence about the Brown quotation and the course of dealings between S–K and Traulsen failed to provide clear and convincing proof that S–K offered the hinge for sale before March 14, 1976." This finding, as far as it rests on disputed issues of fact, is clearly erroneous. In fact, all available evidence points to the opposite conclusion, clearly and convincingly we think, that S–K offered the hinge for sale several months before the critical date.

At trial, Kason relied on the deposition testimony of Irving Brown to show the offer for sale. Brown testified as follows:

Q. What was the result of the conversations between Traulsen and yourself, and Traulsen and Dermot Holden and Frank Loikitz? What was the result of that series of communications?

A. Well, there were several prototypes that were made. They were presented with physical samples for evaluation and after the engineering people at Traulsen resolved, you know, or concluded what it was that they wanted incorporated in their hinge, we worked up a price and presented a price with Traulsen and we were successful in receiving the order.

. . . .

Q. Did the prototypes work? Did Traulsen come back and indicate that they were satisfied?

A. Yes.

. . . .

Q. The goal during this period that we're discussing now was, I take it, sales of these hinges by Standard–Keil to Traulsen, am I correct?

A. Exactly.

Q. Do you recall Standard–Keil after the delivery of these working prototypes from Standard–Keil to Traulsen making a quote to Traulsen with a price?

A. Yes.

Q. And the quote, I take it would have specified quantities as well?

A. Yes.

Q. Was the quotation accepted?

A. Yes.

These events are corroborated by the Czerniawski memorandum dated October 21, 1975. This memorandum shows that the terms of the offer for sale had been discussed by that date. In it, Czerniawski reported to Maier that the "[t]otal cost ... is estimated at $2.80/ea." and that samples of the hinge were available.

The most telling evidence, however, is the "Quotation" dated November 3, 1975, from Brown to Czerniawski. There is some dispute over this document because two different versions were produced from the respective records of Traulsen and S–K. Traulsen had only the first page of the two-page "Quotation" in its corporate files. This page, however, has the essential terms of quantity and price typed on it and bears the signature of Irving Brown. A copy of both pages of the quotation was produced from the personal files of Leon-

ard Berger, a regional salesman of S–K, which he kept in his home. This version, marked "COPY" and "CONFIDENTIAL," is unsigned, but has the name "Irv Brown" typed below the signature line on page 2. Other than minor differences, such as handwritten notations, the first page of each is the same.

The district court accepted the authenticity of the Brown quotation and relied on it as "clear and convincing proof" in its later decision on the motion for relief from the judgment. The court did not give much weight to the quotation in its first opinion, however, as establishing an offer for sale, because there was "no testimony that it had been received by Traulsen before March 14, 1976 and no testimony as to when S–K began to ship the hinge with the switching feature to Traulsen."

■ It is not necessary that a sale be consummated for the bar to operate. Even if no delivery is made prior to the critical date, the existence of a sales contract or the signing of a purchase agreement prior to that date has been held to demonstrate an "on sale" status for the invention. *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1582–83, 229 USPQ 435, 439 (Fed.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *In re Theis*, 610 F.2d 786, 791–92, 204 USPQ 188, 192–93 (CCPA 1979). Indeed, as indicated, no more than a firm offer to sell may be sufficient, *UMC*, 816 F.2d at 656, 2 USPQ2d at 1472. Proof of delivery before the critical date would have been conclusive in this case, but it is not necessary to holding that the device was on sale before then.

The available evidence further indicates that Traulsen received the quotation before March 14, 1976. In his deposition testimony, Brown testified that the date on the quotation corresponded approximately to the time that it was created and sent to Traulsen. Brown admitted on cross-examination that it was possible, although doubtful, that the quotation was not sent to Traulsen because he had no personal recollection of it being sent. This supposition, however, which Buildex makes much of, is

refuted by the fact that the signed first page of the quotation was produced *from Traulsen's corporate files* in response to Kason's subpoena. The page was attached to an internal Traulsen memorandum from Maier to Mr. Traulsen in which Maier specifically referred to it as "their [S–K's] quotation of 11/3/75."

■ Considering all the evidence, we are convinced that the district court's finding that Kason failed to prove by clear and convincing evidence that S–K offered the hinge for sale to Traulsen before March 14, 1976, is clearly erroneous. *See* Fed.R.Civ. P. 52(a). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Here, Buildex presented no evidence of its own to show that S–K offered the hinge to Traulsen at a later date, attempting instead to punch holes in Kason's proof. But even under the "clear and convincing" standard, proof need not be airtight. "The law requires persuasion, not perfection." *Borror v. Herz*, 666 F.2d 569, 574, 213 USPQ 19, 23 (CCPA 1981). The only reasonable conclusion in view of the Brown testimony, the supporting Czerniawski memorandum, and the Brown quotation, is that S–K made an offer for sale before the critical date, and thus, we are left with the definite and firm conviction that the district court's contrary finding was wrong.

### 2. The Joint Development Argument

Once Kason showed that S–K made an offer to sell the hinge to Traulsen before the critical date of March 14, 1976, Buildex had to come forward with an explanation of the circumstances surrounding what would otherwise appear to be commercialization prior to the grace period. *UMC*, 816 F.2d at 656, 2 USPQ2d at 1472.

On motion for relief from the judgment, the district court held that if the dealings between S–K and Traulsen before the critical date constituted an offer for sale, the invention was still not on sale within the

meaning of the statute because it was not placed on sale to a person "outside the inventorship entity." Although the court had earlier found that Holden was the sole inventor of the invention of the '265 patent, it held that the invention was jointly developed by Traulsen and S–K and thus came within an asserted "joint development" exception to the on-sale bar. The court considered the policies behind the on-sale bar and determined that on the facts of this case "not one of the policy considerations that section 102(b) was designed to advance is implicated."

We disagree. To begin, this court has never recognized a "joint development" exception to the "on sale" bar. We have deliberately resisted rigid formulas and per se exceptions in applying § 102(b), instead considering the totality of the circumstances in each case. *See, e.g., Western Marine Electronics, Inc. v. Furuno Electric,* 764 F.2d 840, 844, 226 USPQ 334, 337 (Fed.Cir. 1985); *UMC,* 816 F.2d at 656–57, 2 USPQ2d at 1472. Furthermore, the case relied on by the district court as support for its "joint development" theory, *Ex–Cell–O Corp. v. Litton Ind. Prods., Inc.,* 479 F.Supp. 671, 205 USPQ 612 (E.D.Mich. 1979), is unpersuasive in this case. There, the parties did not dispute, and the court apparently assumed, that if the invention was jointly developed, the "on sale" bar did not apply. *Id.* at 671 n. 14, 205 USPQ at 629 n. 14. Also, *Ex–Cell–O* involved *joint inventors,* namely Stephan, an employee of the patent owner Lucas, and Seager, an employee of Lucas's customer Eimco. Eimco assigned its patent rights to Lucas, and in return Lucas granted Eimco a non-exclusive license to make, use or sell the machines embodying the invention. Here, the district court found that Holden was the *sole inventor* of the '265 patent, and Traulsen did not assign any patent rights to S–K.

■ A sale or offer to sell must, of course, be between two separate entities, *In re Caveney,* 761 F.2d 671, 676, 226 USPQ 1, 4 (Fed.Cir.1985), and that is the case here. The district court's determination that Traulsen was not "outside the inventorship entity" is plainly inconsistent with its holding that Holden was the sole inventor. Traulsen may have provided the impetus for making the invention, but that does not make the transaction any less an offer for sale. *Cf. UMC,* 816 F.2d at 650, 2 USPQ2d at 1466 (offer for sale made in response to government's request for proposals).

Nor does the exclusive selling arrangement between S–K and Traulsen excuse S–K's commercialization prior to the one year grace period. *Cf. Caveney,* 761 F.2d at 674, 226 USPQ at 2 (offer for sale to company formed as joint venture to be manufacturer's exclusive seller). We disagree with the district court that "commercial exploitation of the invention is precluded by Buildex's agreement to grant the sole use of the patent [sic, invention] to Traulsen." This is inconsistent with the court's finding that the '265 patent was "commercially successful," although "not fully equivalent to success in a rough-and-tumble marketplace." There is no doubt that S–K's goal was to make a profit on the sale of the hinges. Absent any other motivation, such as a need for additional experimentation, it makes no sense to say that S–K was not commercially exploiting the invention.

Equally mistaken is the district court's reasoning that the policy expressed in *UMC,* 816 F.2d at 652, 2 USPQ2d at 1468 (quoting *General Elec. Co. v. United States,* 654 F.2d 55, 61, 228 Ct.Cl. 192, 201, 211 USPQ 867, 873 (1981)), against "removing inventions from the public which the public has justifiably come to believe are freely available," was not implicated because the invention was to be used exclusively by Traulsen. The "public" is not limited to ultimate users of the product, but includes manufacturers such as Traulsen. *See Caveney,* 761 F.2d at 676, 226 USPQ at 4. Under the district court's reasoning, the hinge would not have been on sale until *Traulsen* sold or offered to sell a refrigerator with the hinge.

S–K simply waited too long to file its patent application. Fred Weinmann, who made the decision to pursue patent protec-

tion on the hinge for S–K, admitted that "in those early days we probably waited a little bit longer to approach our patent people than we did later on." That is obviously what happened here.

Accordingly, we conclude that the invention claimed in the '265 patent was on sale within the meaning of § 102(b). Traulsen's participation in the development of the hinge does not excuse S–K's attempt to commercialize the invention by offering it for sale more than one year prior to the filing of the patent application.

### B. *Inequitable Conduct and Attorney Fees*

The district court rejected Kason's counterclaim for unenforceability of the '265 patent for inequitable conduct (denominated "fraud") in part because of its finding that Kason failed to show that the patented hinge was on sale more than one year before the filing of the patent application. Kason alleged that both the inventor Holden and Buildex, the corporate assignee, knew of the offer for sale before the critical date and intentionally withheld this material information from the Patent Office, the elements of what we now call "inequitable conduct."

Although this issue may appear moot in view of our holding that the '265 patent is invalid under § 102(b), the question of Hol-den's and Buildex's conduct in the procurement of the patent is still relevant to Kason's request for attorney fees under 35 U.S.C. § 285, which was not decided by district court, as bearing on the question whether the case is "exceptional." *See, e.g., Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1383, 217 USPQ 1281, 1286 (Fed.Cir.1983). Accordingly, the case is remanded for a redetermination of inequitable conduct and for consideration of Kason's request for attorney fees.

### Conclusion

The judgment of the district court that the '265 patent is not invalid under § 102(b) is *reversed.* The case is *remanded* to the district court for a redetermination of inequitable conduct and for consideration of Kason's request for attorney fees.

### COSTS

Costs on appeal to appellant Kason.

**REVERSED AND REMANDED.**