**SCHREIBER MANUFACTURING CO., INC., Plaintiff,**

v.

**SAFT AMERICA, INC., Hong Kong Molder, and Mexico Assembler, Defendants.**

Civ. A. No. 86CV75113DT.

United States District Court, E.D. Michigan, S.D.

Jan. 9, 1989.

Owen E. Perry, Troy, Mich., for plaintiff.

Timothy J. Mullins, Detroit, Mich., Chris Comuntzis, Lawrence Harbin, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

FRIEDMAN, District Judge.

This matter is before the Court on defendant Saft America, Inc.'s [Saft] motion for summary judgment. Plaintiff Schreiber Manufacturing Co., Inc. [Schreiber] has filed a response, and Saft has submitted a reply brief. A hearing was held on Saft's motion on December 7, 1988, and the Court now issues its opinion in this matter.

The present case involves a patent dispute between Schreiber and Saft with regard to two patents.[1] These are Schreiber's Design Patent D281,968 [hereinafter

---

1. The original complaint involved three patents. In addition to the two mentioned in this Memorandum Opinion and Order, plaintiff also alleged that its United States Patent 4,593,461 [the '461 patent] was infringed. The claims regarding the '461 patent were dismissed by the plaintiff on June 26, 1987. Additionally, on July 14, 1987, defendant Highland Superstores, Inc. was dismissed as a defendant.

the '968 patent] and a utility patent also issued to Schreiber, Utility Patent 4,599,283 [hereinafter the '283 patent]. The two patents-in-suit were involved in the production of a portable nickel cadmium [Ni–Cad] battery pack. The '968 patent is a design patent covering the design of the plastic case for the battery pack, while the '283 patent covers the internal structure of the "ribs" and "end walls" which separate and insulate the ten individual D-cell batteries contained in the battery case. Originally, the Ni–Cad battery pack was used as an auxiliary source to power video cameras. However, with the development of an internal battery cartridge, use of the Ni–Cad battery packs for video cameras was rendered obsolete. Nonetheless, the Ni–Cad battery pack is currently heavily utilized in the cellular telephone industry. The '968 and '283 patents, therefore, remain useful.

Schreiber ceased making battery packs at some point after the onset of the current litigation. This cessation came about when Schreiber sold its battery pack tooling. Prior to its departure from the Ni–Cad battery business, Schreiber had produced battery power packs for Saft, among others. The battery packs were produced during the course of a joint venture involving Schreiber, Enertronics, Inc., Enerlite Manufacturing Co., and Enerlite Products Corp. Under the joint venture agreement, Lawrence Simpkin, president of Enerlite Manufacturing, was to provide engineering services; Albert Lee Taylor, president of Enerlite Products, was to provide marketing services; and Schreiber and its wholly-owned subsidiary, Enertronics, were to provide manufacturing services. Schreiber was headed by Karl O. Thiele, its president, and Lawrence Toth, its vice-president. Of note, Schreiber contracted with Chivas Products, Ltd. for the design and cutting of dies for the battery pack's plastic case. The battery pack produced under the joint venture agreement shall be referred to as the Schreiber battery pack.

Saft sold the Schreiber battery packs as their own, having Schreiber mark them with Saft's trademark, "AGAIN & AGAIN." During the course of this business relationship, demand for Saft's battery pack rose. However, in the meantime, Saft concluded that Schreiber was an unreliable supplier. Injuries were sustained by Saft customers from Schreiber battery packs which lacked safety fuses and were, therefore, defective. Additionally, Schreiber began supplying an allegedly unreputable distributor who told customers that it had the Saft battery pack at a lower cost. This battery pack varied from Saft's pack and did not conform to Saft's standards. Saft felt that its reputation was being damaged by Schreiber's actions. To avoid further damage to its reputation, Schreiber began to design its own battery pack in late 1985. This battery pack was also marketed under Saft's "AGAIN & AGAIN" trademark.

Unbeknownst to Saft, Schreiber had obtained design patent '968 and utility patent '283 from the Patent and Trademark Office in December 1985 and July 1986, respectively. In the instant lawsuit, Schreiber contends that Saft's battery pack is a look-alike of the Schreiber battery pack. On this basis, Schreiber has instituted the present lawsuit against Saft for patent and trademark infringement, for unfair competition, and for violations of the Michigan Consumer Protection Act, M.C.L.A. sec. 445.901 *et seq*.

In the instant motion for summary judgment, Saft claims that the patents issued to Schreiber are invalid and unenforceable as barred under 35 U.S.C. sec. 102 or as fraudulently procured. Saft further asserts that there is no trademark or trade dress infringement either because Schreiber has no trademark rights or because no likelihood of confusion is present since the products involved are marketed under entirely different trademarks and trade dress. Notably, Saft's argument also extends to Schreiber's unfair competition claim which is based on trademark infringement. Additionally, Saft argues that the Michigan Consumer Protection Act does not apply under the facts of this case.

In response to the defendant's motion, Schreiber generally contends that genuine issues of material fact exist such that summary judgment cannot be granted. Addi-

tionally, Schreiber contends that the defendant's motion is not properly supported, instead being based on attorney arguments. On these bases, Schreiber contends that summary judgment should be denied.

The standards which must be used in deciding this motion are clear. Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted when there is no genuine issue of material fact. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Sons, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). Additionally, under Fed.R.Civ.P. 56(e), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant in a motion for summary judgment has the initial responsibility of informing the Court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. Fed.R. Civ.P. 56(e). There is no express or implied requirement that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-movant cannot establish an essential element of his claim and summary judgment is appropriate, the movant is entitled to the entry of summary judgment as a matter of law. *Id.* Finally, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These standards are applicable to patent cases, *see Howes v. Medical Components, Inc.*, 814 F.2d 638 (Fed.Cir.1987), and shall be applied in deciding Saft's motion. Each portion of Saft's motion shall be discussed separately below.

## I. *Section 102(b) Statutory Bar*

Pursuant to sec. 102(b),

A person shall be entitled to a patent unless—

\* \* \* \* \* \*

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, ...

This statute presents two clauses under which a patent may be barred based on actions taken in this country. First, an individual is not entitled to a patent when an object is in public use for more than a year prior to the date of the patent application. Second, when the object for which a patent is sought is first on sale more than a year prior to the patent application date, there is also no entitlement to a patent. *See Kalvar Corp. v. Xidex Corp.*, 556 F.2d 966 (9th Cir.1977) (critical date for determining whether invention was in "public use" or "on sale" is one year prior to date of patent application). Defendant Saft claims that Schreiber is not entitled to its '968 and '283 patents under the in "public use" or "on sale" bar of sec. 102(b). Thus, defendant seeks to have plaintiff's patents declared invalid as barred under sec. 102(b).

"[T]he sec. 102(b) bar may result from the activities of either the inventor or a third party." R. Harmon, *Patents and the Federal Circuit* sec. 3.4(c) (1988). For example, "public use" of an invention under sec. 102(b) is any nonexperimental use by the inventor or by an individual who is not placed under any limitation, restriction, or obligation of secrecy to the inventor. *Id.; In re Smith*, 714 F.2d 1127 (Fed.Cir. 1983); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed.Cir.1986). If a public use occurs more than a year prior to the date of the patent application, there is no right to a patent. A commercial use by the inventor will bar a patent, even if that commercial use is kept secret, while an experimental use never constitutes public use and will not bar a patent. R. Harmon, *supra.* The determination of whether a "public use" has occurred can only be made upon consideration of all surrounding circumstances. *TP Laboratories v. Professional Positioners, Inc.*, 724 F.2d 965 (Fed. Cir.1984); *Reactive Metals and Alloys*

*Corp. v. ESM, Inc.,* 769 F.2d 1578 (Fed.Cir. 1985).

The "on sale" bar is similarly not limited to sales by the inventor or individuals under the inventor's control. Actions of third parties may also be sufficient to bar a patent under the "on sale" prohibition. R. Harmon, *supra; J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 787 F.2d 1577 (Fed.Cir.1986). To determine if an invention has been "on sale" for purposes of the sec. 102(b) bar, a three part test must be applied. First, the complete invention claimed must have been embodied in or obvious in view of the item offered for sale. Second, the invention must have been sufficiently tested to verify that it is operable and commercially marketable. Third, the sale must have been primarily for profit rather than for experimental purposes. R. Harmon, *supra; Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 837–38 (Fed.Cir.1984). An offer to sell is also sufficient to run afoul of the sec. 102(b) bar if an offer of the actual invention is in fact made. *Id.; King Instrument Corp. v. Otari Corp.,* 767 F.2d 853 (Fed.Cir.1985). Single sales or offers to sell will bar a patent. *In re Caveney,* 761 F.2d 671 (Fed.Cir.1985). The existence of a sales contract or the signing of a purchase agreement prior to the critical date also has been held to show that the invention was "on sale" for purposes of the sec. 102(b) bar. *Buildex Inc. v. Kason Industries, Inc.,* 849 F.2d 1461 (Fed.Cir. 1988). The circumstances surrounding the putative offer must be considered in determining if an offer was indeed made. *King Instrument Corp., supra* at 860; *Western Marine Electronics, Inc. v. Furano Electric Co., Ltd.,* 764 F.2d 840, 844 (Fed.Cir. 1985). However, one circumstance which has been found to constitute an offer is the sending of a prototype or sample to a customer to elicit a sale. *In re Caveney,* 761 F.2d at 675.

When a sec. 102(b) bar is asserted, whether of the public use or on sale variety, the patent challenger has the burden to present sufficient facts to establish a prima facie case that the invention was either in "public use" or "on sale." *See Harrington Manufacturing Co., Inc. v. Powell Manufacturing Co.,* 815 F.2d 1478, 1482 (Fed. Cir.1986) (alleged infringer must present facts sufficient to establish a prima facie case of public use); *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1150 (Fed.Cir.1983) (patent challenger must present prima facie evidence that an invention has been on sale); *Buildex Corp., supra* (challenger has burden of proving there was a definite sale or offer to sell more than one year prior to patent application). The facts supporting the sec. 102(b) attack on the patents' validity must be established by clear and convincing evidence. *Buildex Inc.,* 849 F.2d at 1463. Once the patent challenger makes a proper prima facie showing of a sale in a summary judgment proceeding, it is incumbent on the patentee to come forward with some evidence showing that there is a genuine issue of material fact as to the sec. 102(b) bar. *Harrington, supra* at 1482. *C.f. In re Smith,* 714 F.2d at 1135 (if prima facie showing made of "public use," patent owner must be able to point to or must come forward with convincing evidence to counter that showing). Absent such a showing, summary judgment may be granted for the patent challenger. *Harrington, supra.*

The two patents-in-suit were each applied for on August 12, 1983. Design Patent '968 was applied for in the names of Karl O. Thiele and Albert Lee Taylor, while Utility Patent '283 named as the inventors Karl O. Thiele and Steven L. Toth. The '283 patent was assigned to Enertronics, Inc., which was a joint venturer with Schreiber in developing the battery pack. In light of the date on which the two patents were applied for, the critical date before which public use or on sale activities would result in a sec. 102(b) bar is August 12, 1982. Thus, the facts and circumstances of this case must be examined to see if sec. 102(b) does bar the two patents.

Saft claims that the Schreiber battery packs were on sale prior to the critical date of August 12, 1982. Schreiber additionally asserts that the sales occurring before the critical were commercial and motivated by profit. In support of its claims, Saft has

provided the following list of events occurring prior to August 12, 1982:

| Date | EVENT |
|------|-------|
| 12/81 | Simpkin develops 3 EM–10 prototypes using plastic cases made by Superior Switchboard of Canton, Ohio |
| 1/82 | Enerlite Products (Taylor) displays Superior Switchboard EM–10 battery pack at January 1982 CES Show in Las Vegas |
| 1/19/82 | Enerlite Products (Taylor) appoints Jeff Trauben of QMI, Inc. as EM–10 marketing representative |
|  | Taylor raises money for EM–10 project, meets Karl O. Theile through Tom Cross, Board member of Schreiber Mfg. |
| 3/82 | Simpkin assembles 20 more EM–10 prototypes from plastic cases made by Idea Display, Inc. of Lombard, Illinois. Enerlite Products & QMI use Idea Display prototypes for marketing, promotion and fund raising. |
| 5/21/82 | Schreiber (Theile), Enerlite Products (Taylor) and Enerlite Mfg. (Simpkin) sign joint venture agreement to mass-produce and market Schreiber EM–10 battery packs |
| 5/13/82 | Theile (Schreiber) contacts Lindsey & Pavelich, division of Chivas Products, Ltd., to have plastic EM–10 case made for Schreiber Mfg. Co. |
| 5/24/82 | Schreiber (Theile) issues EM–10 price quotation to Enerlite Products (Taylor) |
| 5/27/82 | Enerlite Products (Taylor) issues Purchase Order for 5000 finished Schreiber EM–10 battery packs |
| 6/9/82 | Chivas Products completes engineering drawing specifications for Schreiber's battery packs |
| 6/25/82 | Enerlite issues second Purchase Order to Schreiber to purchase an additional 5000 Schreiber EM–10 battery packs |
| 7/23/82 | Chivas Products ships 220 plastic EM–10 cases to Schreiber Mfg. Co. |
| 7/30/82 | Tom Cross (Schreiber Mfg.) solicits order for Schreiber EM–10 battery packs from Video Center of Lansing, Michigan |
| 7/30/82 | Schreiber (Theile) ships 34 finished EM–10 battery packs to Enerlite Products (Taylor) |
| 7/30/82 | Enerlite Products (Taylor) ships 26 Schreiber EM–10 battery packs to sales representatives, coordinated by QMI, Inc. |
| 8/3/82 | Schreiber (Theile) ships 14 finished EM–10 battery packs to Enerlite Products (Taylor) |

| Date | EVENT |
|------|-------|
| 8/3/82 | Enerlite Products (Taylor) ships 6 Schreiber EM–10 battery packs to a retail outlet, The Video Store, and 2 Schreiber EM–10 battery packs to a distributor, Throckmortor Sales Co. |
| 8/6/82 | Tom Cross (Schreiber's Board Member) solicits orders for Schreiber EM–10 battery packs from Troy Video of Troy, Michigan and Thomas Video of Royal Oak, Michigan |
| 8/11/82 | Schreiber (Theile) ships 16 finished EM–10 battery packs to Enerlite Products (Taylor) |
| 8/12/82 | --------------- CRITICAL DATE --------------- |
| 8/12/83 | Theile (Schreiber/Enertronic) files patent applications |

The above-listed occurrences are substantiated by exhibits which include purchase orders, shipping memos, and deposition testimony *inter alia*. It is claimed that these occurrences demonstrate that the Schreiber battery pack was on sale prior to August 12, 1982, and that the two patents-in-suit should accordingly be invalidated. Saft recites two events in particular to show that the Schreiber battery pack was on sale prior to the critical date. These are: (1) the May 27, 1982 purchase order for 5000 finished Schreiber battery packs submitted to Schreiber by Enerlite, and (2) the shipment of the battery packs by Schreiber to Enerlite on July 30, 1982 and August 3, 1982.[2] Saft has submitted copies of the purchase order and shipping memos to substantiate these events. Several of the battery packs shipped to Enerlite were subsequently shipped to a retail store, The Video Store, and to a national sales distributor. Saft also relies on the deposition testimony of Karl O. Thiele and Albert Lee Taylor. In the portions of those depositions which were submitted to this Court, it is stated that the August 3, 1982 battery packs shipped to The Video Store were the product which was covered by the '968 and '283 patents. Saft maintains that these events show that Schreiber sold its patented invention prior to the critical date, and Saft seeks summary judgment in its favor on this issue.

In response, Schreiber does not dispute that sales occurred prior to August 12,

**2.** The Court notes that the Federal Circuit does not recognize a "joint development" exception to the "on sale" bar. *Buildex Inc.,* 849 F.2d at 1465. Thus the fact that Schreiber's sales were to a joint venturer does not prevent this case from falling within the "on sale" bar.

1982. Nor does it dispute that the sales were for profit or that the battery pack sold prior to the critical date were operable and commercially marketable. Rather, Schreiber contends that any devices which were made prior to August 12, 1982 could not have been made according to the two patents-in-suit. In support of its position, Schreiber offers the declaration of Karl O. Thiele.[3] This declaration is attached to Schreiber's response. In brief, the declaration presents a number of modifications allegedly made in the battery packs between the times when the prototype battery pack was developed and when the final version of the battery pack was ready for sale. Due to these modifications, Schreiber alleges that the final version of the product was not ready for sale until after the critical date. Schreiber asserts that the Thiele declaration establishes the existence of a genuine issue of material fact and that Saft's summary judgment motion should, therefore, be denied.

Saft's reply counters Schreiber's arguments by asserting that the fact that the battery packs were not in commercially completed form until after August 12, 1982 is not material to whether the battery packs were in public use or on sale before that date. Saft relies on *UMC Electronics Co. v. United States*, 816 F.2d 647 (Fed.Cir. 1987) and *Barmag Barmer*, 731 F.2d at 836–37, in support of this contention. Saft additionally alleges that the alterations in the battery packs recited in the Thiele declaration were not substantive in nature. That is, Saft asserts that the changes did not materially alter the Schreiber battery pack in such a way that the actual claims of the patents were not present in the battery packs produced prior to August 12, 1982. Saft offers the declaration of Neal Hepner, an expert witness, in support of

this assertion. On this basis, Saft claims that the "on sale" bar cannot be overcome by the Thiele declaration.

■ It is a question of law whether an invention is on sale. *Id.* at 657; *Barmag Barmer*, 731 F.2d at 836–37. In *UMC*, the Federal Circuit refined the limitations of the "on sale" bar. It held that reduction of practice of a claimed invention is not an absolute requirement for invoking the "on sale" bar. 816 F.2d at 656. Rather, "[a]ll of the circumstances surrounding the sale or offer to sell, including the stage of development of the invention and the nature of the invention, must be considered and weighed against the policies underlying section 102(b)." *Id.* As *UMC* indicates, the patent challenger has the burden of proving that a definite sale or offer to sell occurred more than one year prior to the date of the patent application. *Id.; D.L. Auld*, 714 F.2d at 1150. Further, when the claimed invention is not what was offered for sale but was merely obvious in view of the item offered for sale, it will also be barred under sec. 102(b) if the sale or offer to sell occurred more than one year prior to the patent application date. Under such circumstances, the patent challenger must show both that there was a definite sale or offer to sell before the critical date, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or rendered the claimed invention obvious by its addition to the prior art. *UMC, supra* at 656. This combination of the "on sale" bar and the 35 U.S.C. sec. 103 obviousness determination is known as a "sections 102(b)/103" bar.[4] If the patent challenger establishes facts showing that the requisites for either the "on sale" bar or the "sections 102(b)/103" bar are met, the patentee must provide an explanation to

---

**3.** Pursuant to 28 U.S.C. sec. 1746, unsworn declarations made under penalty of perjury have the same effect as sworn affidavits. Thus, for the purposes of the present summary judgment motion, declarations such as Mr. Thiele's shall be treated as affidavits.

**4.** Thus, lack of reduction to practice of an invention does not mean that the sec. 102(b) bar is inapplicable. Rather, the "sections 102(b)/103" bar may come into play if the invention is not

completely reduced to practice. "Implicit in the operations of a sections 102(b)/103 bar is the *absence* of reduction to practice of the *claimed invention* as a requirement for the bar to operate." *UMC*, 816 F.2d at 656 (emphasis in original). If the prior art devices, including the item on sale or offered for sale, substantially embody the elements of the claimed invention, the "sections 102(b)/103" bar may apply.

offset the challenger's showing that commercialization has occurred prior to the critical date. *Id.* The patentee's explanation must be by clear and convincing evidence in order to defeat a summary judgment motion. *Barmag Barmer, supra* at 839.

■ In the present case, Saft has presented prima facie evidence that a sale occurred prior to the critical date. This prima facie evidence consists of the May 27, 1982 purchase order and the shipments of battery packs occurring on July 30, 1982 and August 3, 1982, as well as the sworn deposition testimony of Karl O. Thiele and Albert Lee Taylor. Further, Saft has presented Neal Hepner's declaration in support of its assertion that the battery packs sold prior to August 12, 1982 embody the claims of the '283 patent and the design features of the '986 patent.[5] To counter this evidence, Schreiber has offered what amounts to the mere technical objection that the later patented invention was not completely embodied at the time of sale. Schreiber does not dispute the existence of the May 27, 1982 purchase order, nor does it dispute that it shipped battery packs to Enerlite Products on July 30, 1982 and August 3, 1982. Schreiber's explanation for this apparent commercialization is that the patented invention was not completely embodied in the battery packs which were involved in the May 27, 1982, July 30, 1982, and August 3, 1982 transactions. As set forth above, Schreiber relies only on the declaration of Karl O. Thiele in support of its claim.

■ The Court finds Schreiber's response to be insufficient to defeat Saft's summary judgment motion. Initially, the Court draws counsel's attention to the very specific requirements for affidavits under Fed.R.Civ.P. 56(e): "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." On review of Mr. Thiele's declaration, it is apparent that much of the declaration does not conform to the requirements of Rule 56(e). Mr. Thiele's declaration is replete with inadmissible hearsay and with legal conclusions. Those portions of Mr. Thiele's declaration which constitute hearsay or legal conclusions shall be disregarded in ruling upon Saft's motion. *See State Mutual Life Assurance Co. v. Deer Creek Park,* 612 F.2d 259 (6th Cir. 1979) (affidavit composed of hearsay and opinion evidence does not satisfy the summary judgment rule and must be disregarded). Taking the remainder of Mr. Thiele's declaration in the light most favorable to Schreiber,[6] the Court finds that Schreiber has failed to meet its burden under Rule 56(e). Specifically, Schreiber has not "set forth specific facts showing that there is a genuine issue for trial."

Saft has met its initial obligation of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. In its motion for summary judgment, Saft contends that the claimed invention was embodied in or obvious in light of the item offered for sale. Although Saft has no obligation to support this contention with an affidavit, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, it has submitted Mr. Hepner's declaration as support. This declaration demonstrates that there is no genuine issue of material fact as to whether the claimed invention

---

5. As expert witnesses are allowed to give opinion evidence under Fed.R.Evid. 702, Mr. Hepner's opinion as to whether the claims in the patents-in-suit are embodied in the battery packs sold prior to August 12, 1982 is admissible evidence. Accordingly, his declaration may properly be considered by the Court when ruling on the present motion. *See* Fed.R.Civ.P. 56(e).

6. The declaration contradicts earlier statements made by Mr. Thiele in deposition. Although Mr. Thiele's declaration points out internal design changes which allegedly demonstrate that the patented invention was not offered for sale or on sale prior to August 12, 1982, his earlier deposition testimony was that no changes in the internal design of the battery pack had occurred during 1982. Despite the conflict between Mr. Thiele's declaration and his deposition testimony, the Court may not exclude the declaration. C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* sec. 2738 (2d ed. 1983 and Supp. 1988).

was on sale for sec. 102(b) purposes. As indicated by the declaration, the claims of the patents were embodied in the battery packs which were sold prior to the critical date. The Court's review of the claims of the patents and the battery pack at issue in Mr. Hepner's declaration indicates that the patent claims indeed read on the battery pack. Further, Saft has submitted the sworn deposition testimony of Karl O. Thiele and Albert Lee Taylor to show that the battery packs sold before the critical date embodied the claims of the inventions. Numerous exhibits have also been submitted in support of Saft's arguments. Via the proffered testimony and exhibits, Saft has shown that there was a sale and that the claimed invention is what was offered for sale. Saft has accordingly met the *UMC* requirements for proving that a definite sale occurred prior to the critical date.

In response to Saft's motion, Schreiber has supplied the Court with nothing which shows that there is a genuine issue for trial as to the "on sale" bar. At hearing Schreiber indicated that it would rely on Mr. Thiele's affidavit as to the "on sale" issue. However, Mr. Thiele's declaration carefully skirts the claims of the patents-in-suit, focusing on changes between the battery packs sold prior to August 12, 1982 and those sold after that date without addressing whether the changes affected the claims of the patents. Mr. Thiele's declaration does not address the heart of the "on sale" bar, which is whether the *claimed* invention was offered for sale. Mr. Thiele's statement erroneously focuses on a commercial embodiment of the claimed invention rather than on the language of the patent claims. This is insufficient to meet Schreiber's burden under Fed.R.Civ. P. 56(e). Because Schreiber has failed to show there is a genuine issue for trial, summary judgment shall be entered for Saft as to the "on sale" bar. The '283 and '986 patents are, therefore, invalid as barred by sec. 102(b).

■ The Court also finds convincing Saft's argument that, even if the battery packs sold before August 12, 1982 did not wholly incorporate the claims of the pat-

ents, they nonetheless became part of the prior art. *See Barmag Barmer*, 731 F.2d at 836, *citing Timely Products Corp. v. Arron*, 523 F.2d 288, 302 (2d Cir.1975) (whatever is on sale more than a year prior to filing patent application becomes part of the prior art over which the claim must be patentable). As the battery packs constituted part of the prior art, they were pertinent to the Patent Office's novelty and obviousness inquiries. Further, Saft correctly indicates that the patentees had an affirmative duty under 37 C.F.R. sec. 1.56 to inform the Patent Office of the sales of the battery packs prior to the critical date. However, the Patent Office was not informed of the sales; nor were the pre-critical battery packs listed as prior art in the patent application. Whether the '283 and '968 patents would have issued had the pre-critical date battery packs been considered as part of the prior art is certainly debatable. It is clear, though, that the "sections 102(b)/103" bar would be applicable under these circumstances. It is also of concern that the patentees engaged in seemingly inequitable conduct by failing to disclose the pre-critical dates battery pack sales to the Patent Office. Nevertheless, as the Court has held that Schreiber did not meet its burden under Rule 56(e), no further discussion of this issue need be undertaken at this time.

## II. *Section 102(f) Inventorship*

Saft asserts that the patents-in-suit were likely not invented by the claimed inventors. Specifically, Saft claims that one of the alleged inventors of the '968 patent, Albert Lee Taylor, testified that Idea Display, a company working on the design of the battery pack, conceived the product design. Saft additionally contends that the '283 patent was invented not by Karl Thiele and Steven Toth, but by Mr. Simpkin of Enerlite Manufacturing. Documents and statements arising out of previous litigation are supplied in support of Saft's claims. On this basis, Saft contends that the patents-in-suit should be invalidated pursuant to sec. 102(f). As the Court has determined that the '283 and '968 patents are invalid under the "on sale" bar of sec.

102(b), it need not address the sec. 102(f) issue.

### III. *Trademark and Trade Dress Issues*

▮ Schreiber contends in Count II of its complaint that its trademark and trade dress rights have been violated by Saft. In its summary judgment motion, Saft claims that there is no action for trademark or trade dress infringement in the present case. On the trademark issue, Saft asserts that Schreiber's trademark is "ENERTRONIC" while Saft's trademark is "AGAIN & AGAIN." It is argued that these trademarks do not conflict, and that summary judgment for Saft is appropriate on this issue.

Schreiber has offered no argument either in its brief or at hearing on this issue beyond a general argument that Saft's motion is supported only by attorney argument rather than by affidavits or factual evidence. On this basis, the Court finds that summary judgment must be granted for Saft. Schreiber has not met its burden of demonstrating that there is a genuine issue of material fact as to the trademark issue. Saft has pointed to the reasons for its motion as it is required to do under Rule 56(e). Contrary to Schreiber's assertions, Saft has no duty to present affidavits or other evidence in support of its claims. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. However, Schreiber has not met its opposing burden, failing to offer meaningful opposition of any sort. Nor has Schreiber established the essential elements of its trademark claim. It has not shown that it had trademark rights to "AGAIN & AGAIN," or that Saft infringed on Schreiber's "ENERTRONIC" trademark. Therefore, summary judgment must be granted for Saft on this issue.

▮ The trade dress claim raised by Schreiber is a separate issue from the trademark issue. In this claim, Schreiber essentially argues that the Saft battery pack is a look-alike of the Schreiber battery pack. On this basis, the complaint asserts that sec. 43(a) of the Lanham Act, 15 U.S. C. sec. 1125(a), has been violated.

In its motion for summary judgment, Saft alleges that no sec. 43(a) violation has occurred. Saft claims that its battery pack and Schreiber's battery pack do not have the same configuration and that they are not look-alikes. Further, Saft claims that Schreiber has not shown that the trade dress has acquired secondary meaning in the marketplace. Accordingly, Saft seeks summary judgment on Schreiber's sec. 43(a) claim.

Schreiber has offered no specific response to this motion. Rather, it generally asserts the same response made to the trademark issue: that Saft's motion is not supported by legally admissible evidence such as affidavits or factual evidence. As noted above, Saft does not have an obligation to present affidavits or similar materials negating Schreiber's claims. Rather, it need only inform the Court of the basis for its motion and demonstrate the absence of a genuine issue of material fact. Therefore, Schreiber's opposition is ineffectual. Additionally, Schreiber has made no attempt to establish the essential elements of its trade dress claim. Therefore, if summary judgment is appropriate, Saft's motion must be granted.

There are three elements which must be shown for a sec. 43(a) trade dress claim:

> To establish a violation of section 43(a), a plaintiff must prove: (1) that the trade dress of product configuration of the two competing products is confusingly similar; (2) that the appropriated features of the trade dress or product configuration are primarily non-functional; and (3) that the trade dress or product configuration has obtained secondary meaning.

*Kwik–Site Corp. v. Clear View Manufacturing Co., Inc.,* 758 F.2d 167, 178 (6th Cir.1985), *citing Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444–45 (Fed.Cir.1984).

Saft claims that the three elements of a sec. 43(a) claim have not been met. Saft argues that Schreiber has not established non-functionality or secondary meaning in the marketplace for its trade dress. Nor, it is alleged, has actual consumer confusion been shown. Saft points to the absence of any evidence supporting Saft's trade dress

claim. This presentation is sufficient to meet Saft's burden under Rule 56(e). Schreiber has not offered any arguments or evidence directed at Saft's allegations. Schreiber has offered nothing establishing the elements of its trade dress claim. This is insufficient to meet Schreiber's burden under Rule 56(e). Accordingly, summary judgment shall be granted for Saft on this issue.

Unfair competition has also been raised been raised as a claim in Count III of the complaint. This claim is based upon common law and Michigan trademark and trade dress infringement. Saft contends that the Michigan law relating to the alleged unfair competition is consistent with the general laws of trademark, trade dress, and unfair competition. In support of its contention, Saft relies on *Marion Laboratories, Inc. v. Michigan Pharmacal Corp.*, 338 F.Supp. 762, 767 (E.D.Mich.1972). As it has demonstrated that summary judgment should be granted as the Schreiber's federal trademark and trade dress claims, Saft alleges that it should be granted summary judgment on this issue.

Schreiber has once again offered no response to Saft's motion. The Court's review of the law on this issue indicates that Saft has correctly stated the law. *See, e.g., Empire National Bank v. Empire of America*, 559 F.Supp. 650 (W.D.Mich.1983). Since Schreiber has offered no meaningful opposition, summary judgment shall be granted for Saft on this issue.

IV. *Michigan Consumer Protection Act*

 Saft contends that summary judgment should be granted in its favor on the Michigan Consumer Protection Act claim raised in Count IV of the complaint. Specifically, Saft alleges that the Michigan Consumer Protection Act has no provisions for protecting trade dress. Once again, Schreiber has not responded to Saft's allegation.

After review of Saft's motion and Schreiber's complaint, the Court concludes that summary judgment must be granted for Saft on this issue. Although Saft incorrectly asserts that the Michigan Consumer Protection Act does not cover consumer confusion arising out of trade dress, *see Empire National Bank, supra,* the "likelihood of confusion" standard applicable to the Michigan Consumer Protection Act is the same as that involved in federal and state trademark law. *Id.* As no likelihood of confusion has been established as to Schreiber's federal and state trademark and trade dress claims, summary judgment may appropriately be granted on the Michigan Consumer Protection Act claim as well.

Accordingly,

IT IS HEREBY ORDERED that Saft America, Inc.'s motion for summary judgment is GRANTED.