**HARRINGTON MANUFACTURING COMPANY, INC., Appellant,**

v.

**POWELL MANUFACTURING COMPANY, Appellee.**

**Appeal No. 86-878.***

United States Court of Appeals, Federal Circuit.

Nov. 5, 1986.

* This opinion was issued on November 5, 1986 in unpublished form. It is herewith reissued for publication in response to a request of appellee.

Deborah S. Humble, Fleit, Jacobson, Cohn & Price, Washington, D.C., argued for appellant. With her on brief was Harvey B. Jacobson, Jr.

George M. Sirilla, Cushman, Darby & Cushman, Washington, D.C., argued for appellee. With him on brief were W. Warren Taltavull and Robert W. Adams.

Before RICH and DAVIS, Circuit Judges, and SKELTON, Senior Circuit Judge.

DAVIS, Circuit Judge.

Harrington Manufacturing Company (Harrington), appeals on certification from a December 26, 1985 decision of the United States District Court for the Eastern District of North Carolina, allowing partial summary judgment in favor of appellee, *Powell Manufacturing Company* (*Powell*) 623 F.Supp. 872 (E.D.N.C.1985). The rul-

ing was based on the District Court's determination that appellant's September 1966 demonstration of its tobacco harvester incorporating claim 8 of its patent No. 3,507,-103 (the Pickett patent) was public use under 35 U.S.C. § 102(b). We affirm.

## I.

The application for the Pickett patent was filed on October 2, 1967 and is directed to a mechanized tobacco harvester that, unlike its predecessors, has a swinging head. This feature enables the machine to accommodate tobacco stalks that are out-of-line or doglegged.[1] Unrefuted evidence was presented to the District Court that Pickett, one of its three inventors, demonstrated a prototype of the harvester to Osborne, a leading agricultural journalist, sometime in September 1966. Osborne then published an article in the *Charlotte Observer* on September 26, 1966 which reported that "the machine lumbered through a tobacco field, getting every height to which the defoliators were adjusted." This was found to be a public use more than a year prior to the filing of the patent application.

Harrington cites two reasons why the District Court erred when it granted appellees summary judgment: first, that the harvester was still experimental and not yet reduced to practice when Pickett demonstrated it to Osborne in late September 1966; and, second, that the District Court improperly imposed upon appellant a special burden of persuasion by requiring it to come forth with "clear and convincing evidence" that the demonstration was experimental, and therefore not a public use under § 102(b).

## II.

In support of its position that the Osborne demonstration was merely an experimental use of the harvester and thus outside § 102(b), Harrington notes that tobacco leaves ripen from the bottom of the stalk upward toward the top, necessitating

that a single tobacco plant be harvested in three or four passes throughout the growing season. It is said, therefore, that since the Osborne demonstration did not take place until late in the season, only the top leaves remained on the plants, the lower leaves having been harvested earlier in the season. While appellant concedes that the harvester performed satisfactorily on the upper leaves during the demonstration, it urges that at the time it was impossible to determine whether the harvester would perform satisfactorily on the lower leaves. Appellant says that it was not until January 1967, when the harvester was taken to Florida and was used to harvest lower leaves of tobacco, that the harvester was finally reduced to practice.

This court will affirm a District Court's grant of summary judgment when the record below reveals no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). *See Lemelson v. TRW, Inc.,* 760 F.2d 1254, 1260, 225 USPQ 697, 700–01 (Fed.Cir.1985). What is required is a showing of sufficient information that would support the existence of the claimed factual dispute and require a judge or jury to resolve the conflicting different versions of truth through a trial. *Lemelson,* 760 F.2d at 1261, 225 USPQ at 701. Any doubt as to the presence or absence of any material fact must be resolved in favor of the party opposing summary judgment. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1546, 222 USPQ 562, 565–66 (Fed.Cir.1984). Even employing this stringent standard, we conclude, after a thorough review of the record, that appellant has presented no evidence as to a genuine issue of material fact to negate that the Osborne demonstration was a public use under § 102(b).

This court held in *In re Brigance,* 792 F.2d 1103, 1107–08, 229 USPQ 988, 991 (Fed.Cir.1986), that the reviewing court must look to the totality of the circum-

---

1. The concept of the floating head is embodied in claim 8 of the Pickett patent, the claim at issue in these proceedings.

stances in determining whether an invention has been in public use within the meaning of § 102(b).[2] Looking to the totality of the circumstances in this case, we see no evidence in the record to negate that the Osborne demonstration was a public use of the Pickett invention. Osborne was under no promise of secrecy; on the contrary, Pickett obviously demonstrated the harvester to Osborne in order to gain public recognition. In the newspaper article, Osborne not only reported that the harvester flawlessly defoliated the tobacco leaves, but even published an approximate cost of the harvester. This is a clear indication of Pickett's commercial motive. Also, appellant has not presented any evidence that there was some public necessity requiring appellant to demonstrate the harvester prototype invention to Osborne prior to the critical date of October 2, 1966. Possibly, had Pickett shown the harvester only to one of the agricultural scientists at the University of North Carolina prior to the critical date, appellant might have been able to argue that this constituted an experimental use and was necessary to facilitate modifications of the invention. But, in this case, the only possible inference that can be drawn from Pickett's demonstration to Osborne, a well-known agricultural journalist in the area, is that Pickett wanted to exploit the harvester commercially.[3]

■ It is immaterial that Mr. Harrington, one of the other inventors, offered evidence that he was uncertain whether the harvester would operate. Pickett's purpose was sufficient to show that he, as one of the joint inventors, intended to exploit the harvester for a commercial purpose.[4] Any of the inventors was free to make, use, or sell the invention in the absence of an agreement to the contrary. 35 U.S.C. § 262.

■ Also, the fact that minor modifications were made and a third prototype built subsequent to the Osborne demonstration does not raise a material issue of fact in this instance. The prototype that Pickett demonstrated to Osborne clearly fell within the scope of claim 8 of the Pickett patent. As one of our predecessor courts held in *In re Theis*, 610 F.2d 786, 794 n. 11, 204 USPQ 188, 195 n. 11, (CCPA 1979):

> There is no requirement that an invention function perfectly in order to be reduced to practice or considered as on sale or in public use. All that is necessary is that the invention be commercially operable; it may have problems which are not due to 'fundamental defects.' *National Biscuit Co. v. Crown Baking Co.*, 105 F.2d 422, 424, 42 USPQ 214, 215 (1st Cir.1939).

■ Finally, we do not conclude that appellant's asserted uncertainty that the harvester would satisfactorily harvest lower leaves of the tobacco plant raises a genuine issue of fact in this instance. Claim 8 of the Pickett patent is a broad claim and does not require that lower leaves of tobacco be harvested; rather, claim 8 reads on a device that removes leaves from part of the tobacco stalk. When Pickett demonstrated the harvester to Osborne in September 1966, claim 8 unequivocally had been reduced to practice.

---

2. This follows our decision in *TP Laboratories v. Professional Positioners, Inc.*, 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984) where we held that there was no experimental use exception *per se* to the public use doctrine under § 102(b). Rather, we ruled that the court must look to the totality of the circumstances to determine whether there has been a public use within the meaning of § 102(b).

3. Contrary to appellant's insistence that appellant's subjective intent creates a factual issue in this case, we conclude that an inventor's subjective intent is immaterial when objective evidence points otherwise. As this court stated in

*In re Smith*, 714 F.2d 1127, 1135, 218 USPQ 976, 983 (Fed.Cir.1983): "[i]n determining the purpose of the alleged experimental use, objective evidence indicating a purpose for such testing and experiment is generally preferred. An inventor's subjective intent is generally of minimal value." Since the objective evidence in this case plainly indicates that Pickett demonstrated the embodiment of claim 8 to Osborne with the intention of commercial exploitation, we conclude that there is no material issue of fact in dispute.

4. There was nothing in the proceedings from Pickett himself as to his alleged experimental purpose.

## III.

■ Appellant also argues that the District Court improperly imposed a special burden on Harrington by requiring it to prove by "clear and convincing evidence" that the Osborne demonstration was experimental and outside § 102(b). As this court has previously held, under 35 U.S.C. § 282, the burden of proving invalidity always remains with the party asserting invalidity; the burden never shifts to the patentee. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed. Cir.1983). Further, in *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260, 225 USPQ 697, 700, this court stated that the District Court has "no genuine discretion in determining summary judgment" and is barred from granting summary judgment so long as there is an actual dispute of factual inferences that would, as a matter of law, have a material impact on the entitlement of summary judgment.

■ Nevertheless, even in summary judgment proceedings, once an alleged infringer has presented sufficient facts to establish a *prima facie* case of public use, it is incumbent on the patentee to come forward with *some* evidence that there is a genuine issue of material fact in dispute. *Barmag Barmer Maschinenfabrik AG, v. Murata Machinery, Ltd.*, 731 F.2d 831, 221 USPQ 561 (Fed.Cir.1984). In this instance, Harrington had the burden of coming forward with some facts to negate the showing that the Osborne demonstration was a public use, and appellant failed to carry that burden. It is therefore irrelevant that the District Court may have erred in its one reference to the "clear and convincing evidence" standard in connection with Harrington's burden.[5]

AFFIRMED.

---

**5.** We doubt whether the District Court actually held appellant to the "clear and convincing evidence" standard, even though the decision below specifically refers at one point to this increased burden. In reviewing the opinion below, we consider it likely that the court below did not actually use the "clear and convincing evidence" standard but based its opinion on the fact that appellant failed to meet its burden of going forward with any evidence to show that the use was an experimental use. 623 F.Supp. 872, 877 (E.D.N.C.1985) (*"no* evidence to rebut the showing by Powell that claim 8 ... was in public use before the critical date of October 2, 1966" (emphasis added)). In any event, our own review of the record convinces us that there is no evidence which raises a genuine issue of material fact to refute that the Osborne demonstration was a public use of the Pickett invention.