**DTA CORPORATION, a California corporation, d/b/a Horton's Trim Connection, Plaintiff,**

v.

**J & J ENTERPRISES, a General Partnership, et al., Defendants.**

**No. CV 87–7139 MRP.**

United States District Court, C.D. California.

Sept. 28, 1988.

Kit M. Stetina and Bruce B. Brunda, Stetina and Brunda, Laguna Hills, Cal., for plaintiff.

Joseph W. Price, Price, Gess & Ubell, Irvine, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PFAELZER, District Judge.

On August 22, 1988, the defendants' motion for summary judgment was heard before the Honorable Mariana R. Pfaelzer, United States District Judge. The Court, having considered the papers submitted and oral arguments made, makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff DTA Corporation is a California corporation having its principal place of business in Costa Mesa, California.

2. Defendants John Gaukler and Jodie Smith are a general partnership operating under the name "J & J Enterprises," having a place of business in Chino, California.

3. Third party defendant Clifford L. Horton, Jr. is the named inventor of United States Design Patent No. 284,752 for Vehicular Running Boards (" '752 design patent") and plaintiff is his exclusive licensee.

4. The first running board was made by October 22, 1982, more than one year before the filing date of the patent application.

5. The '752 design patent was filed in the United States Patent Office on January 3, 1984. The '752 design patent discloses a running board for mounting on a vehicle having a planar L-shaped step plate attached to an elongated rounded tubular frame that extends below and on the outside periphery of the step plate. The step plate and tubular frame have matching rounded corners. A tread pattern for the L-shaped step plate is shown in Figure 6 in broken lines, but is described in the '752 design patent as for illustrative purposes only forming no part of the patented design features.

6. At least sixteen running boards (four on each vehicle) were sold by Clifford Horton without any restrictions on their use more than one year before the filing date of the patent application.

7. Some of these sixteen running boards were placed on vehicles of car dealerships such as Allen–Oldsmobile Cadillac, Inc. in November 1982 for public display on their sales lots. These running boards were subsequently sold to customers of the dealership in November 1982, and the identities of these customers were unknown to Clifford Horton.

8. Clifford Horton did not require either the dealership or the customers to report any information regarding the performance of any feature of the running boards to Horton in November 1982.

9. Clifford Horton was paid for each running board sold in 1982.

10. Customers were not informed that the running boards were experimental, and believed in 1982 that they had made commercial purchases of running board accessories for their trucks.

11. In 1982, Clifford Horton personally owned a truck used in his business and subsequently installed his running boards on that truck in 1983. Despite the ready availability of his own truck, he did not "test" his initial running boards by installing them on his truck in 1982.

12. Clifford Horton did not impose any restrictions, limitations or requirements upon the sales and/or use of the running boards in 1982.

13. A set of four Horton running boards were placed on public exhibit at the 30th Annual Recreational Vehicle and Manufactured Housing Show at 1000 Elysian Park Avenue, Dodger Stadium, Los Angeles, California in November 1982 to encourage the purchase of trucks with running boards by the public. The set of four Horton running boards were subsequently purchased by Joseph Baune on November 15, 1982.

14. Clifford Horton's claimed "experimental" concerns were not directed to the patented design and were only related to the strength of the running board and to whether the finish of the material would rust.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Venue is properly laid in this district.

3. Plaintiff is the exclusive licensee of the U.S. Design Patent.

■ 4. The public use or on sale bar of 35 U.S.C. § 102(b) operates to invalidate patents for inventions that have been commercially exploited prior to one year before the patent application date. The short grace period is intended to provide inventors the incentive to pursue the patent process diligently once their inventions are ready for commercial application, thereby limiting monopoly and permitting the public to benefit. *Kock v. Quaker Oats Co.*, 681 F.2d 649, 652 (9th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 787, 74 L.Ed. 2d 994 (1983). Commercial exploitation can occur through sales, or through "public use," defined as "any use of that invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor." *In re Smith*, 714 F.2d 1127, 1134 (Fed.Cir.1983) (citation omitted).

■ 5. The experimental use of the invention, for the purpose of perfecting the invention, does not constitute public use under § 102(b). *See In re Smith*, 714 F.2d at 1134 (Fed.Cir.1983) (citing *City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 134, 24 L.Ed. 1000 (1878)); *see also Kock*, 681 F.2d at 653 (stating that the experimental use "exception" applies to the sale of an invention as well as to its use). "Experimental use" is not an exception to the public use doctrine, but rather such use is part of the totality of the circumstances that a court is to consider in determining whether an invention has been in public use within the meaning of § 102(b). *See Harrington Mfg. Co., Inc. v. Powell Mfg. Co.*, 815 F.2d 1478, 1480–81 & n. 2 (Fed.Cir.1986).

6. Although the burden of proving public use always remains with the party challenging the patent, *see TP Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971 & n. 3 (Fed.Cir.), *cert denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984), "even in summary judgment proceedings, once an alleged infringer has presented sufficient facts to establish a *prima facie* case of public use, it is incumbent on the patentee to come forward with *some* evidence" to negate the showing. *Harrington*, 815 F.2d at 1482 (emphasis in original); *cf. Kock*, 681 F.2d at 655 (stating the Ninth Circuit's position that "where a prima facie sale has been proven ... it is the inventor's burden to produce clear and objective evidence of experimental purpose as the law defines it").

7. The defendants established a prima facie case of public use. At least four sales of running boards were made in November 1982. Three sales were made to auto dealerships, Allen–Oldsmobile, Inc. and Diller Chevrolet. A retail sale was made to the Newport Christian School.

8. The plaintiff did not produce any evidence that sales were made for experimental purposes. No nexus existed between the alleged experimentation and the perfection of the invention. *See In re Smith*, 714 F.2d at 1136 (Fed.Cir.1983) (stating that it is settled law that experimental use cannot be claimed with respect to unclaimed features of the invention). Mr. Horton did not retain control over the experiment, no progress records were kept, no secrecy was required, and the public display and payment were not obviously incidental to an experiment. *See Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1564 (Fed.Cir.1987) (listing factors used to determine whether a public use or sale was for purposes of experiment). No objective observer could conclude that the four sales were for the purpose of perfecting the design of the tubular, curved-edge running board.

9. The subjective intent of Mr. Horton, as to the experimental purpose of the sales is of minimal value. *See In re Smith*, 714 F.2d at 1135 (citing *Robbins, Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 431 (9th Cir.1973)); *TP Laboratories*, 724 F.2d at 972 (noting that it is particularly unhelpful when articulated after litigation is initiated). If the objective evidence "points otherwise," then the subjective intent of the inventor is irrelevant. *Harrington*, 815 F.2d at 1481 n. 3; *see also Kock*, 681 F.2d at 658 n. 7 (stating that "[t]he motivating force for the experiments will normally come from the inventor, but if the buyer does not have reason to know of the experimental purpose, it is unlikely ... that a court will either").

10. United States Design Patent No. 284,752 is invalid.

11. The issues of cost and the award of any statutory attorneys' fees are hereby reserved.

## JUDGMENT

On August 22, 1988, the defendants' motion for summary judgment was heard before the Honorable Mariana R. Pfaelzer, United States District Judge. The Court, having considered the papers submitted and oral arguments made, and pursuant to the Findings of Fact and Conclusions of Law filed concurrently herewith, concludes that United States Design Patent No. 284,-752 is invalid.

IT IS ORDERED that summary judgment shall be entered for the defendants and against the plaintiff.