911 F.2d 713
 15 U.S.P.Q.2d 1898
 U.S. ENVIRONMENTAL PRODUCTS INC. and International Sludge
Reduction Co., Plaintiffs/Counterclaim Defendants/Appellants,
v.
George B. WESTALL, Jr., individually as statutory trustee of
SDS Company, and d/b/a SDS Company; SDS Company; and
Solids Dewatering Systems, Inc., Defendants/Counterclaim
Plaintiffs/Cross-Appellants,
v.
Felix G. JANSSEN, R. Kimball Stedman, Robert L. Roberts,
Morris M. Riise, Walter R. Strothman and Irving M.
Jahnig, Counterclaim Defendants/Cross-Appellees.
 Nos. 89-1580, 89-1581.
 United States Court of Appeals,
Federal Circuit.
 Aug. 16, 1990.
 
 1
 Kenneth J. Jurek, Mayer, Brown & Platt, Chicago, Ill., argued for plaintiffs/counterclaim defendants/appellants. With him on the brief were Ronald A. Jacks, Rosanne J. Faraci and Carrie Huff. Also on the brief was Paul H. Berghoff, Allegretti & Witcoff, Ltd., Chicago, Ill.
 
 
 2
 Melvin G. Berger, Brand & Leckie, Washington, D.C., argued for defendants/counterclaim plaintiffs/cross-appellants. With him on the brief was John D. Whitler. Also on the brief were William G. Bruns and Frederick M. Woodruff, Gravely, Leidler & Woodruff, St. Louis, Mo. Sean T. Beeny, Brand & Leckie, Washington, D.C., of counsel.
 
 
 3
 Before NIES, Chief Judge,* and MILLER, Senior Circuit Judge, and LIFLAND, District Judge.**
 
 
 4
 LIFLAND, District Judge.
 
 
 5
 This appeal is from the judgment of the United States District Court for the Eastern District of Missouri, U.S. Environmental Products, Inc., et al., v. George B. Westall, Jr., et. al., No. 87-196C(A), slip op. (E.D.Mo. May 19, 1989), in a patent infringement action brought by U.S. Environmental Products Inc. and International Sludge Reduction Co. ("USEP/ISR") alleging infringement of United States Patent No. 4,632,764 (the " '764 patent"). Following a bench trial, the district court held that the patent was invalid because it did not contain a true statement of inventorship and the invention was on sale more than one year prior to the patent application. The district court also found that even if the patent had been valid, it was not infringed by defendants George B. Westall, Jr., individually as statutory trustee of SDS Company and d/b/a SDS Company; SDS Company; and Solids Dewatering Systems, Inc. (hereinafter "Westall"). Finally, the district court denied defendants' request to find the case exceptional within the meaning of 35 U.S.C. Sec. 285, thereby warranting attorney fees. Both USEP/ISR and Westall appeal.
 
 
 6
 We affirm solely on the basis that the '764 patent is invalid by virtue of the on-sale bar of 35 U.S.C. Sec. 102(b) (1982). We remand the cross-appeal on the attorney's fees issue for factual findings in accordance with this opinion.
 
 I.
 
 7
 In 1976, Forrest Stannard, Morris Riise and others formed Sludge Reduction System ("SRS") to develop and market a sludge dewatering system. During the late summer or fall of 1976, SRS was successful in selling a sludge dewatering system to the City of Sunrise, Florida. The Sunrise system became operational in January, 1977. By the spring of 1977, the relationship among the SRS principals had deteriorated, culminating in the break up of the company. ISR purchased the rights to the patent application and appointed USEP as its exclusive licensing agent in the United States.
 
 
 8
 SRS first filed a patent application in 1976. The subject matter of the application was a sludge dewatering system referred to as a vacuum-assisted sludge dewatering bed, or VASDB. The 1976 application claimed only a single filter plate. After several rejections and amendments, a continuation-in-part application was filed on August 2, 1978, claiming a multiple layer filter plate. This CIP application ultimately resulted in the issuance of the '764 patent on December 30, 1986. The '764 patent covers a method for dewatering sludge by the use of a rigid, multi-layer filter plate, which is a type of VASDB.
 
 
 9
 George Westall, Jr. is the president, sole director and sole shareholder of the other defendants. He became involved with sludge dewatering systems when his company, Sears-Westall, became a manufacturer's representative for USEP. After Sears-Westall was terminated as a manufacturer's representative, George Westall became a competitor of USEP and developed and marketed a multi-layer filter plate. USEP/ISR allege that Westall's filter plate infringes the '764 patent.
 
 
 10
 Westall argues the '764 patent is invalid by virtue of the on-sale bar of 35 U.S.C. Sec. 102(b). According to Westall, the invention was on sale within the meaning of the statute because of the sale to the City of Sunrise and operation of the Sunrise facility.
 
 
 11
 35 U.S.C. Sec. 102 provides in pertinent part:
 
 
 12
 Sec. 102. Conditions for patentability; novelty and loss of right to patent
 
 
 13
 A person shall be entitled to a patent unless
 
 
 14
 . . . . .
 
 
 15
 (b) the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States....
 
 
 16
 One of the primary purposes of the on-sale bar is to prevent an inventor from commercially exploiting the exclusivity of an invention in excess of the statutorily authorized period. See General Elec. Co. v. United States, 228 Ct.Cl. 192, 198, 654 F.2d 55, 61, 211 USPQ 867, 873 (1981). If SRS' sale to Sunrise triggers the provisions of Sec. 102(b), USEP/ISR's claim that Westall infringed the '764 patent must fail.
 
 II.
 
 17
 We review the district court's conclusion of a Sec. 102(b) bar as a question of law, while the facts underlying the conclusion are subject to the clearly erroneous standard of review. See Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1266, 229 USPQ 805, 808 (Fed.Cir.1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).
 
 
 18
 The district court's relevant findings of fact regarding on-sale bar are as follows:
 
 
 19
 In June, 1976, SRS reached an agreement with the City of Sunrise, Florida to submit a proposal for the installation of a sludge dewatering system. The proposal contained a provision stating that the SRS was not allowed to conduct experiments without the written consent of the City Engineers. In the final offer-to-sell letter dated August 30, 1976, it was stated that the dewatering units would be completely under the control of Sunrise, and SRS needed a specific reservation of its right to retain limited access to insure that proper operating procedures were being followed. Further, it was stated that Riise was to be permitted to show the units to other potential customers, and that SRS was prevented from making changes in the units without the written consent of Sunrise. Sunrise signed this final offer to sell on September 29, 1976. After the Sunrise installation was completed, a sales brochure bulletin was released which contained photographs of the installation and language suggesting that the sludge dewatering systems were then available for purchase.
 
 
 20
 ....
 
 
 21
 The Sunrise beds became operational in January, 1977. The evidence shows that Sunrise personnel assumed responsibility for operating the beds. Sunrise was responsible for regulating and enforcing security measures.
 
 
 22
 ....
 
 
 23
 The testimony discloses that had the Sunrise facility been an experimental endeavor, plaintiffs would have adhered to a testing schedule and maintained detailed records of their progress achieved over a period of time. No such records were offered into evidence.
 
 
 24
 These facts provide the foundation for the district court's conclusion that the Sunrise facility was established for the purpose of commercial rather than experimental use.
 
 
 25
 Because the multiple layer filter plate in the CIP application, filed August 2, 1978, was not disclosed in the parent application filed in 1976, the CIP application was not entitled to the filing date of the parent application. The critical date thus became August 2, 1977. The parties do not dispute that a purchase agreement was signed by the City of Sunrise on September 29, 1976, that the system was a multi-layer filter plate system, and that the units were operational in January 1977. Westall has proven a prima facie case of an on-sale bar.
 
 
 26
 A section 102(b) bar is avoided if the primary purpose of the sale was experimental, Baker Oil Tools, Inc. v. Geo Vann, Inc., 828 F.2d 1558, 1563, 4 USPQ2d 1210, 1213 (Fed.Cir.1987); UMC Elecs. Co., v. United States, 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir.1987), cert. denied, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). USEP/ISR contends that the district court improperly imposed on them the burden of proving experimental use, in effect, the ultimate burden of persuasion that there was no on-sale bar.
 
 
 27
 We disagree. Once a defendant demonstrates a prima facie case of on-sale or public use, the patent holder must "come forward with convincing evidence to counter that showing." TP Laboratories, Inc. v. Professional Positioners, Inc., 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.1984), cert. denied, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984). The district court's statements that USEP/ISR "failed to present sufficient evidence showing the experimental nature of the facility" and that "(n)o such records (of testing) were offered into evidence" does not indicate that the court shifted the ultimate burden of proof. Rather, the district court concluded that USEP/ISR failed to meet their burden of coming forward with sufficient evidence to counter Westall's prima facie showing of an on-sale bar.
 
 III.
 
 28
 We now turn to our evaluation of that conclusion. This court has emphasized that the totality of the circumstances must be considered in determining whether a particular event creates an on-sale or public use bar. See, e.g., Harrington Mfg. Co. v. Powell Mfg. Co., 815 F.2d 1478, 1480-81 & n. 2, 2 USPQ2d 1364, 1366 & n. 2 (Fed.Cir.1986); Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1585 n. 4, 226 USPQ 821, 826 n. 4 (Fed.Cir.1985). The district court considered a number of factors that this court has identified as relevant to such a determination. For instance, it considered lack of record-keeping, TP Laboratories, 724 F.2d at 969, 220 USPQ at 581; lack of control by the inventor over the filter beds, In re Smith, 714 F.2d 1127, 1136, 218 USPQ 976, 983 (Fed.Cir.1983); lack of secrecy obligations on the part of the user, Hycor Corp. v. Schlueter Co., 740 F.2d 1529, 1535, 222 USPQ 553, 557 (Fed.Cir.1984); and the existence of promotional activities, Harrington, 815 F.2d at 1481, 2 USPQ2d at 1366. We conclude that the district court chose appropriate factors established by this court for determining experimental use, i.e., that there was no sale of the invention within the meaning of the statute.
 
 
 29
 We now review the district court's evaluation of the totality of the circumstances, and reject USEP/ISR's assertion that the evidence overwhelmingly showed that the sale to Sunrise was experimental.
 
 
 30
 According to USEP/ISR, the only means of testing whether the sludge dewatering system would perform acceptably was to locate a water treatment plant willing to try the system. We recognize that an inventor may need to have a customer test the invention to determine that it works as intended. See City of Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, 24 L.Ed. 1000 (1877). The question in this case is whether the facts lead to the conclusion that the subject sale was for such a purpose.
 
 
 31
 That SRS did not make a profit on the installation, but was only reimbursed for part of its actual costs, is not necessarily persuasive. A patent owner may have created an on-sale bar despite losing money on a sale. See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 840, 221 USPQ 561, 568 (Fed.Cir.1984).
 
 
 32
 Similarly, the evidence that Sunrise was advised and understood that the system was "experimental" is not dispositive. USEP/ISR refer to Forrest Stannard's description of the system in a letter dated June 16, 1976 as an "experimental unit." Richard Jacobs, former Superintendent of Operations for the City of Sunrise, agreed that the City understood that the technology was experimental. The subjective belief of inventors or customers, however, must be weighed against objective evidence which indicates otherwise. See, e.g., In re Brigance, 792 F.2d 1103, 1108 & n. 8, 229 USPQ 988, 991 & n. 8 (Fed.Cir.1986); Harrington, 815 F.2d at 1481 & n. 3, 2 USPQ2d at 1366 & n. 3. We turn to that objective evidence.
 
 Lack of record keeping
 
 33
 The district court did not err in its findings that SRS did not adhere to a testing schedule and maintained no records. USEP/ISR cite testimony of SRS principals that they conducted tests at Sunrise. Riise, for instance, testified that he cleaned the dewatered sludge from the filter beds using a shovel and a bobcat and ran 10 to 15 cycles to train Sunrise employees. Despite the evidence of some tests, the district court concluded, as do we, that the lack of written progress records is circumstantial evidence of a non-experimental purpose. See TP Laboratories, 724 F.2d at 969, 220 USPQ at 581.
 
 Lack of control over the invention
 
 34
 With respect to the parties' disagreement over the provisions of the Sunrise contract, we find no error in the district court's findings that while the initial proposal contained a provision stating that SRS was not allowed to conduct experiments without the written consent of the City Engineers, the final offer-to-sell letter provided that the dewatering unit would be completely under the control of Sunrise, and SRS needed a specific reservation of its right to regain limited access to insure that proper operating procedures were being followed. In addition, there was no provision restricting resale or use.
 
 
 35
 We conclude, as did the district court, that SRS' lack of control over the operation of the beds is strong evidence of commercial purpose. While control is not determinative, it is an important factor. See In re Hamilton, 882 F.2d 1576, 11 USPQ2d 1890 (Fed.Cir.1989).
 
 Promotion of the invention
 
 36
 The district court also found that the final contract provided that Riise was permitted to show the units to potential customers. In addition, the district court found that after the Sunrise installation was completed in January, 1977, a sales brochure bulletin was released which contained photographs of that installation and language suggesting that the sludge dewatering systems were then available for purchase. While there is no evidence in the record indicating the precise date of release of the technical bulletin, Riise testified that he had it printed and "used it" and did not contest that this occurred before the critical date. In addition, press releases issued in October 1976 announced that the City of Sunrise had agreed to install the SRS units. In October, 1976, Stannard designed and built a model that was used by SRS at a trade show in Minneapolis. Finally, Sunrise made no promise of secrecy. The district court did not err in its findings on these issues and in viewing such promotional activities as inconsistent with USEP/ISR's claim of experimental use.
 
 
 37
 In sum, we hold that the district court correctly found that the sale to Sunrise and its use of the sludge dewatering system created an on-sale bar, taking into consideration all of the evidence supporting and detracting from USEP/ISR's assertion that the sale was for experimental purposes.
 
 IV.
 
 38
 The district court denied Westall's request for attorney fees under 35 U.S.C. Sec. 285 without findings or explanation. Further, the issue is not covered in the court's judgment despite a request for amendment. Under the circumstances here, where the court did find misconduct in determining substantive issues, we conclude that we require the benefit of the court's analysis, including findings under Fed.R.Civ.P. 52(b), in order to review the court's ruling. See Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1573, 7 USPQ2d 1606, 1611 (Fed.Cir.1988); S.C. Johnson & Sons, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 200-01, 228 USPQ 367, 369 (Fed.Cir.1986). Accordingly, we remand to the district court for an opinion on this issue.
 
 V.
 
 39
 Westall urges that this court find the appeal of USEP/ISR frivolous. We cannot agree that USEP/ISR's contentions on the issues on this appeal lack a minimally arguable basis.
 
 VI.
 
 40
 Reasonable costs are awarded to Westall. However, the court finds that Westall's submission of full replacement volumes of appendices to correct a few inaccuracies was unnecessary and unreasonable. Westall's Motion to Recover Cost of Filing Corrected Appendix dated March 13, 1990, is denied.
 
 
 41
 AFFIRMED-IN-PART AND REMANDED-IN-PART.
 
 
 
 *
 Chief Judge Nies assumed the position of Chief Judge on June 27, 1990
 
 
 **
 Judge John C. Lifland of the United States District Court for the District of New Jersey, sitting by designation