**BERNHARDT L.L.C., Plaintiff,**

v.

**COLLEZIONE EUROPA USA, INC., Defendant.**

**No. CIV.1:01–CV–00957.**

United States District Court, M.D. North Carolina.

Feb. 21, 2003.

H. Stephen Robinson, Norwood Robinson, Robinson & Lawing, Winston–Salem, NC, for plaintiff.

Teresa Raquel Robinson, Peter Joseph Juran, Blanco Tackabery Combs & Matamoros, P.A., Winston–Salem, NC, Nicholas Mesiti, Brett M. Hutton, Heslin Rothenberg Farley & Mesiti, P.S., Albany, NY, for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Bernhardt, L.L.C. ("Plaintiff") brings this action against Defendant Collezione Europa USA, Inc. ("Defendant") alleging that Defendant infringed upon six of Plaintiff's patents which claim ornamental designs of individual pieces that are part of a suite of furniture named the "Coronado Collection." Along with its answer, Defendant filed counterclaims against Plaintiff. This action is presently before the court on Defendant's motion for partial summary judgment regarding the invalidity of four of Plaintiff's patents, namely United States Patents Nos. D439,-770; D441,560; D441,975; and D441,980.

## FACTS

Plaintiff is a North Carolina limited liability company that owns six design patents covering furniture pieces that are part of a suite of furniture sold by Plaintiff's license under the name "Coronado Collection." Each of the six design patents protects the ornamental design of an individual piece of furniture in the Coronado Collection. The design patents at issue in this motion are as follows: D439,770 (the " '770 patent"); D441,560 (the " '560 patent"); D441,975 (the " '975 patent"); and D441,980 (the " '980 patent") (collectively the "Coronado Patents"). The earliest patent application of the Coronado Patents was filed October 10, 2000.[1]

Defendant is a New Jersey corporation that produces furniture "knock-offs." Defendant has its own furniture designers, but a significant portion of its product lines is derived from the designs of others. Defendant searches the furniture market for designs created by other companies that Defendant believes will sell. If Defendant can create a similar design and produce a product below the retailer's cost of the original, it will do so. As long as the product designs that Defendant replicates are not covered by a valid patent or other legal protection, this practice does not violate the law. If the replicated designs are

---

[1]. The following is a list of the application dates for the relevant Coronado Patents: '770 patent (October 10, 2000); '975 patent (October 12, 2000); '980 patent (October 13, 2000); and '560 patent (October 13, 2000).

patent-protected, however, Defendant may be liable for patent infringement.

Plaintiff introduces its new furniture design to all dealers at the International Home Furnishings Market ("Market"), which is held twice a year in April and October in High Point, North Carolina. About a month before Market, Plaintiff shows a limited group of invitees mock-ups or samples of some of the pieces in its new collections.[2] The purpose of this "pre-market" is not to solicit sales or introduce specific products, but rather to give a limited number of key customers a general idea as to the stylistic direction of the company. In addition to the key customers, a representative from the publication "Furniture Today" attends, as does Plaintiff's sales and marketing management and sales representatives. No one outside of Plaintiff's employees is required to sign a confidentiality agreement restricting or limiting the dissemination of what was shown.

At pre-market all of these invitees are escorted by Plaintiff's employees and shown pieces of Plaintiff's collections. Only representative pieces, not the entire collection, are shown at pre-market and those that are shown may be different than the final designs ultimately introduced at Market. Even when a final sample of a piece is prepared in time for pre-market, it may not be shown. Similarly, a sample or mock-up may be shown at pre-market even though Plaintiff knows that the piece it will introduce at Market will be significantly different.

The pre-market to the 1999 October International Home Furnishings Market ("the 1999 Pre–Market") was held over three days on September 13–15, 1999. At least sixty invitees attended as well as a representative from "Furniture Today." Plaintiff admits to showing some individual items within the Coronado Collection at that time.

Prior to the 1999 Pre–Market, on August 24, 1999, one of Plaintiff's employees created a document titled "October '99 Pre–Market List." This was a "wish list of the pieces [Plaintiff] would like to have for premarket to show, and it serves as sort of a target for [Plaintiff's] internal team to try to get these pieces ready in time for premarket." (Robinson Aff. Opp'n Def.'s Mot. Summ. J. of Invalidity, Ex. B, W. Collett Dep. at 23, lines 16–20.) This list contained "stock keeping unit" (SKU) numbers that Plaintiff uses to identify its pieces. The first three digits of a SKU identify the group or collection (*e.g.*, 355 for the Coronado Collection) and the last three digits identify the type of piece (*e.g.*, a poster bed or an end chair). A SKU number is assigned to the designer's initial sketch of a piece early in the design process and it follows the design through all subsequent re-designs as long as it continues to be the same piece.

Many of the relevant SKUs on the October '99 Pre–Market List have the notation "(new)" beside them and one was marked "(existing)." (Pl.'s Resp. Def.'s Mot. Summ. J. of Invalidity at 6.) "(New)" meant that Plaintiff wanted a new sample incorporating some design change for the pre-market that had been ordered but had not yet been manufactured. (Robinson Aff. Opp'n Def.'s Mot. Summ. J. of Invalid-

---

**2.** A "sample" is a fully functional piece of furniture. A "mock-up" is just an exterior shell. Numerous samples and mock-ups may be made during the design development process. Plaintiff typically does not show a sample at Market that was shown at pre-market.

It builds new samples of every piece in the collection for Market. (Robinson Aff. Opp'n Def.'s Mot. Summ. J. of Invalidity, Ex. C, McLean Dep. at p. 43 lines 13–24, at p. 63 line I through p. 64 line 4.)

ity, Ex. B, W. Collett Dep. at p. 24 line 24 through p. 25 line 7.) "(Existing)" meant that Plaintiff intended to show an existing mock-up or sample that had been built during the product development process even though it might not be the same as the final design that would be offered for sale at Market. (*Id.* at p. 28 lines 5–12.) If Plaintiff was indifferent to whether it showed a new sample or an existing sample or mock-up, it would mark an item "(existing or new if here in time)." (Pl.'s Resp. Def.'s Mot. Summ. J. of Invalidity at 6.) When the last revision was made to the October '99 Pre–Market List on September 7, 1999, all but one of the SKUs at issue were still identified as "(new)."

After the 1999 Pre–Market, a "Premarket Wrap-up" document was prepared by Plaintiff's Senior Case-goods Designer, Linda McLean. This document brings together all outstanding issues, notes and comments on new collections that need to be addressed before Market. It also includes all comments collected from customers concerning the furniture shown at the 1999 Pre–Market.

Plaintiff believes that Defendant has infringed, and is presently infringing, the Coronado Patents by manufacturing, importing, and selling pieces of furniture that are confusingly similar to the ornamental designs protected by the Coronado Patents. Plaintiff filed a complaint against Defendant alleging patent infringement and seeking monetary and injunctive relief against Defendant. Defendant responded to Plaintiff's complaint by filing an answer and asserting counterclaims of (1) noninfringement, invalidity and unenforceability, and (2) patent misuse. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff filed a motion to dismiss Defendant's counterclaims for failure to state a claim upon which relief may be granted. In an order dated July 3, 2002, this court granted Plaintiff's motion as to the declaration of unenforceability and patent misuse. This case is presently before the court on Defendant's motion for partial summary judgment regarding the invalidity of the '770, '560, '975, and '980 patents.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

Defendant claims that the '770, '560,- '975, and '980 patents are invalid under the "public use" bar of 35 U.S.C. § 102(b). Defendant also claims that the '975 patent is invalid because it claims two patentably

distinct designs in a single patent. Plaintiff claims that Defendant has failed to show sufficient evidence of a "public use" and that the '975 patent is a valid design with two embodiments.

### A. *"Public Use" of the Coronado Patents*

■ A patent carries a presumption of validity. 35 U.S.C. § 282. To overcome this presumption, Defendant must prove by clear and convincing evidence that the patent is invalid. *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed.Cir.2002). Clear and convincing evidence is that evidence which produces "an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). "The burden of proving invalidity always remains with the party asserting invalidity; the burden never shifts to the patentee." *Harrington Mfg. Co., Inc. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir.1986). Nevertheless, "even in summary judgment proceedings, once an alleged infringer has presented sufficient facts to establish a *prima facie* case of public use, it is incumbent on the patentee to come forward with *some* evidence that there is a genuine issue of material fact in dispute." *Id.*

■ Under 35 U.S.C. § 102(b), a person is entitled to a patent, *inter alia*, unless "the invention was ... in public use ... in this country, more than one year prior to the date of the application for the patent in the United States." The Court of Appeals for the Federal Circuit has described "public use" as including "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *In re Smith*, 714 F.2d 1127, 1134 (Fed.Cir.1983). "Whether a public use has occurred is a question of law."

*Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1058 (Fed.Cir.1996). In considering whether a particular use was a public use within the meaning of Section 102(b), the court must consider the "totality of the circumstances in conjunction with the policies underlying the public use bar." *Id.* These policies include:

> (1) discouraging the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available; (2) favoring the prompt and widespread disclosure of inventions; (3) allowing the inventor a reasonable amount of time following sales activity to determine the potential economic value of a patent; and (4) prohibiting the inventor from commercially exploiting the invention for a period greater than the statutorily prescribed time.

*Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1198 (Fed.Cir.1994).

Before the court may analyze the circumstances to determine whether the alleged "use" was "public," however, it must first determine whether there was a "use" by Plaintiff of the patented designs and, if so, whether this "use" occurred more than a year prior to the date of the patent application. The earliest patent application filing of the relevant Coronado Patents is October 10, 2000. The 1999 Pre–Market was held on September 13–15, 1999. Because the 1999 Pre–Market was held more than one year prior to the earliest patent application filing, any "public use" or "sale" of furniture with the relevant Coronado Patents' designs at the 1999 Pre–Market would render these patents invalid.

Defendant alleges that its evidence proves that the Coronado Patents' designs were on display at the 1999 Pre–Market, thus constituting a "use" under Section 102(b). Using the October '99 Pre–Market

List and its SKU numbers and the Premarket Wrap-up, Defendant alleges that these documents, plus deposition testimony, prove the Coronado Patents' designs were on display at the 1999 Pre–Market.

■ After reviewing the evidence and viewing all reasonable inferences in the light most favorable to Plaintiff, the court finds that genuine issues of material fact remain as to whether there was a "use" by Plaintiff as to the Coronado Patents in dispute. Defendant relies heavily upon the October '99 Pre–Market List and the Premarket Wrap-up documents to support its allegation that these particular Coronado Patents were displayed at the 1999 Pre–Market. Defendant's interpretation of these documents, however, differs substantially from that of Plaintiff.

Defendant views the October '99 Pre–Market List as a list of items to be on display at the 1999 Pre–Market and claims that the SKUs on the list match up with the Coronado Patents at issue. Defendant also claims that the notes and comments in the Premarket Wrap-up must have been from customers who viewed the Coronado Patents at the 1999 Pre–Market. Lastly, Defendant claims that deposition testimony from Plaintiff's employees supports its allegations.[3]

In contrast, Plaintiff contends that the October '99 Pre–Market List is nothing more than an internal "wish list" of items which it hoped to have for display. Also, it disputes that the SKUs on the list referred specifically to the Coronado Patents. Plaintiff explains that all but one of the alleged Coronado Patent SKUs had "(new)" next to it, indicating that the piece was still on order less than a week before the 1999 Pre–Market. Plaintiff further claims that the Premarket Wrap-up is not a compilation of comments by pre-market invitees or customers, but is a document created after the 1999 Pre–Market that brought together all comments, issues, and notes on all new collections. Plaintiff states that many of the notes and comments would have come from internal sources and may well have been made weeks in advance of pre-market. Thus, Plaintiff avers that a comment about a particular SKU on the Premarket Wrap-up does not necessarily mean that a piece of that type was actually shown at the 1999 Pre–Market. Lastly, Plaintiff contends that the deposition testimony does not support Defendant's claims and that the answers are uncertain at best. Plaintiff notes that Defendant has produced no testimony from any witnesses who saw or

---

**3.** In its Brief in Support of its Motion for Partial Summary Judgment, Defendant also relies upon the statements and conclusions made by Bruce W. Dunkins to support its allegations as to both claims of invalidity against the Coronado Patents. Plaintiff has moved to strike this testimony as inadmissible expert opinion.

Federal Rule of Evidence 702 permits the admission of expert testimony covering "scientific, technical, or other specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (emphasis omitted). Dunkins has been retained and compensated by Defendant as a "design patent expert." (Bruce W. Dunkins Decl. Supp. Def.'s Mot. Partial Summ. J. at 2, para. 4.) Although patent law qualifies as "scientific, technical, or other specialized knowledge," the court finds little of Dunkins' testimony to be helpful. Even Defendant characterizes Dunkins' testimony as consisting only of "factual summary, synthesis, and analysis." (Def.'s Opp'n Pl.'s Mot. to Strike Decl. of Bruce W. Dunkins in Supp. of Def.'s Mot. Summ. J. of Invalidity, at 3.) Although Dunkins' factual summaries may be helpful, any legal conclusions are for the court. Because the court does not find Dunkins' testimony determinative, Plaintiff's motion to strike will be denied as moot.

have actual knowledge that the Coronado Patents' furniture was on display.

Each of these points of disagreement is a factual issue that is material to the ultimate resolution of this case and must be left for the ultimate fact-finder to decide at trial. At most, Defendant's evidence proves that there is a possibility that some pieces of the Coronado Collection were on display at the 1999 Pre–Market. As a result, the court will deny summary judgment as a matter of law on Defendant's claim of invalidity based on prior "public use" as to the '770, '560, '975, and '980 patents.

## B. *Validity of the '975 Patent*

In its second claim, Defendant alleges that the '975 Patent is invalid because it embodies two patentably distinct designs in a single patent. Plaintiff argues that the '975 patent is simply a valid design with two different embodiments.

The '975 Patent covers the design of a type of chair. The patent shows five "drawing sheets" of the chair, including four drawings of the chair without arms ("Fig. 1" through "Fig. 4") and one drawing showing the chair with arms ("Fig.5"). (Compl., Ex. E.) The inventors of the '975 Patent designs are Thomas M. McDaniel and D. Scott Coley.

Defendant asserts that the '975 Patent claims two "patentably distinct designs" because it shows a chair with arms and a chair without arms. Defendant claims that the arms are a "point of novelty" of the arm chair design in the '975 Patent and thus each design is patentably distinct from the other.[4] Defendant supports this allegation by pointing to the deposition testimony of both McDaniel and Coley, in which each testified that they considered the arm to be "new." Furthermore, Defendant claims that neither McDaniel nor Coley made his opinion known to the Patent Office Examiner during the prosecution of the patent application. Lastly, Defendant claims that the addition of the arms to the chair is not in the form of a modification of the shape of an element in the chair design, but rather an addition of a new element. As a result, Defendant argues that the '975 Patent impermissibly claims more than one design and is, as a matter of law, invalid.

It is the responsibility of every court working with patents to be "satisfied that the party challenging validity has properly carried its burden of overcoming the statutory presumption of validity of a patent." *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed.Cir.1984); *see also* 35 U.S.C. § 282. In the absence of any evidence "more pertinent" than that actually considered by the Patent and Trademark Office, substantial deference is due to the Patent and Trademark Office decision to issue the patent. *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1571 (Fed.Cir.1986); *see also Ameri-*

---

**4.** Defendant alleges that Plaintiff has admitted to the "novelty" of the '975 Patent's arm design in its answers to Defendant's interrogatories. At best, this allegation is arguable. Before listing any information about the "armchair embodiment" of the chair (subsection f), Plaintiff specifically limits its answer:

> **Interrogatory 20**. Identify and describe with particularity each point of novelty of United States Design Patent No. D441,975 entitled "Dining Room Chair."

**RESPONSE:** Subject to the general objections and limitations set forth herein, Plaintiff responds as follows. The design elements that comprise the design protected by U.S. Design Patent No. D441,975, and in whose particular expression and/or use in combination may be found the points of novelty of said patented design, consist of the following.
(Hutton Decl. Supp. Def.'s Mot. Partial Summ. J. of Invalidity, Ex. G, Pl.'s Resp. Def.'s Second Interrogs. at 10.)

*can Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed.Cir.1984) ("Deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider.").

To be valid, a design or invention must be both novel, under 35 U.S.C. § 102, *and* "nonobvious," under 35 U.S.C. § 103. "Thus, included within the presumption of validity is a presumption of novelty, [and] a presumption of nonobviousness ..., each of which must be presumed to have been met." *Structural Rubber Prods.*, 749 F.2d at 714. "The question of obviousness is distinct from that of novelty. A device may be new and useful and yet still not be patentable if an examination of the technology of the prior art and the ordinary skill of the artisan reveals that the new and useful innovation is obvious." *Burgess Cellulose Co. v. Wood Flong Corp.*, 431 F.2d 505, 509 (2d Cir.1970).

■■ If two embodiments of the same design are considered valid and patentably distinct from one another, they do not constitute a single inventive concept and thus may not be included in the same design application. *See In re Platner*, 155 U.S.P.Q. 222 (Comm'r Pat. & Trademarks 1967). Multiple embodiments of a single inventive concept, however, may be included in the same design application only if they are patentably indistinct. *See In re Rubinfield*, 47 C.C.P.A. 701, 270 F.2d 391, 123 U.S.P.Q. 210 (Cust & Pat.App.1959).

■ The primary patent examiner of the '975 Patent, Gary D. Watson, understood that he was including more than one design under the '975 Patent. In his "examiner's amendment," he found two embodiments of the '975 Patent design. Supporting his conclusion to include two embodiments in the same patent, Watson stated:

> The above identified embodiments are considered by the examiner to present overall appearances that are not distinct from one another. The only difference between embodiments being that one has arms and the other does not but the design of the arms is *considered obvious in the art.* Accordingly, they are deemed to comprise a single inventive concept and are being retained and examined in the same application.

(Robinson Aff. Opp'n Def.'s Mot. Summ. J. of Invalidity, Examiner's Notice of Allowability, Ex. G, at 2 (emphasis added).)

In light of the relevant law and the deference afforded to a patent examiner's decision, the court finds that Defendant has not carried its burden of persuasion. Defendant simply has not offered sufficient evidence to persuade the court that the Primary Patent Examiner's opinion is incorrect and that it is entitled to judgment as a matter of law.

## CONCLUSION

Defendant has failed to establish that no genuine issue of material fact exists in this case and that Defendant is entitled to summary judgment as a matter of law. Therefore, for the reasons discussed above, Defendant's motion for summary judgment will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion for summary judgment [Doc. # 39] is **DENIED.**

IT IS FURTHER ORDERED that Plaintiff's motion to strike [Doc. # 58] is **DENIED** as moot.