**ARTICULATE SYSTEMS, INC., Plaintiff,**

**v.**

**APPLE COMPUTER, INC., Defendant.**

**No. Civ.A. 96–10345–RGS.**

United States District Court,
D. Massachusetts.

Aug. 23, 1999.

Mark J. Hebert, John M. Skenyon, Jennifer T. Miller, Jolynn M. Lussier, Fish & Richardson, Boston, MA, David L. Hayes, Trinidad Arriola-Kern, Marta Beckwith, Fenwick & West, Palo Alto, CA, Howard G. Pollack, Fish & Richardson, P.C., Menlo Park, CA, Charlene M. Morrow, David C. McIntyre, Banner & Witcoff, Ltd., Washington, DC, James H. Pooley, Fish & Richardson, Menlo Park, CA, Monique L. Cordray, Fish & Richardson, La Jolla, CA, for Plaintiff.

Joseph P. Lavelle, Fabrizio F.R. Rasetti, Christopher N. Olsen, Howrey & Simon, Washington, DC, Susan M. Reid, Fenwick & West, Palo, Alto, CA, Robert F. Ruyak, Jonathan G. Graves, Howrey & Simon, Washington, DC, John P. Iwanicki, Michael H. Shanahan, Banner & Allegretti, Ltd., Boston, MA, Edwin H. Wheeler, Menlo Park, CA, Thomas J. Scott, Hunton & Williams, Washington, DC, Dale A. Malone, Banner & Witcoff, Ltd., Boston, MA, for Defendant.

*ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING APPLE COMPUTER'S MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF INDEFINITENESS*

STEARNS, District Judge.

After review of the objections to the Magistrate Judge's well-reasoned Report, I *ADOPT* his Recommendation and therefore *DENY* Apple's Motion for Summary Judgment. I agree with the Magistrate Judge that Apple failed to carry its burden of demonstrating that the term "higher level events" is indefinite. This is not to say, however, that Apple's request for a claim construction hearing lacks merit. The court is inclined to hold one if the remaining summary judgment motions is denied. However, Apple's suggestion that a ruling on this matter be deferred until such a hearing is held confuses the purposes and legal rules governing these distinct events.

SO ORDERED.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT APPLE COMPUTER, INC'S MOTION FOR SUMMARY JUDGMENT THAT ARTICULATE'S PATENT IS INVALID FOR INDEFINITENESS (DOCKET NO. 135)*

KAROL, United States Magistrate Judge.

Plaintiff, Articulate Systems, Inc. ("Articulate"), holds United States Patent 5,377,303 ("the '303 patent") on certain voice recognition software. The software allows a computer's operating system to recognize voiced utterances and convert them into recognizable commands, thus permitting the user to command the operating system through the use of his or her voice. Articulate claims in this lawsuit that Defendant, Apple Computer, Inc. ("Apple"), is offering a software product entitled "PlainTalk" that infringes the '303 patent. Apple ultimately filed four motions for summary judgment or partial summary judgment. This opinion addresses only the third of the four motions, in which Apple moves for summary judgment on the ground that "Articulate's patent is invalid, under the second paragraph of 35 U.S.C. § 112, for failing to particularly point out and distinctly claim the subject matter that Articulate regards as its invention." *Defendant Apple Computer, Inc.'s Motion for Summary Judgment That Articulate's Patent is Invalid for Indefiniteness,* Docket No. 135. Specifically, Apple claims in this motion that the term "higher level events," which appears in various

claims of Articulate's patent, is not sufficiently defined or clarified by the patent specification to satisfy the statutory standard. *Id.* For reasons set forth below, I recommend that the motion be **DENIED.**

## I. Legal Framework

The phrase "higher level events" appears in independent Claim 1 of the '303 patent, as well as in several dependent claims. Claim 1 thus reads, in pertinent part, that the inventor claims:

A system for enabling voiced utterances to control window elements in a graphical user interface, said graphical user interface being provided by an operating system responsive to events posted in an event queue, some events in the queue being posted in response to signals received from an alphanumeric keyboard in accordance with a predetermined format specific to the keyboard, said events including higher level events. . . .

The term "higher level events" is not specifically defined in the claims or elsewhere in the specification of the '303 patent. Apple contends that the term is not one that would be generally known to persons skilled in the relevant art, and, therefore, that the patent is invalid for indefiniteness under the second paragraph of 35 U.S.C. § 112 (West 1984) ("section 112").

The second paragraph of section 112 provides:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112.

The purpose of this provision is to put competitors on fair notice of the limits of the claimed invention, so that they may fairly know the point at which their activities may begin to pose a serious risk of infringement. *E.g., Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1581 (Fed.Cir.1996). It has thus been interpreted to require that the claim be spelled out with sufficient particularity and in language sufficiently familiar to one skilled in the art to inform the latter as to the limits of the claim. *Amgen, Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1217 (Fed.Cir.1991); *Candela Laser Corp. v. Cynosure, Inc.,* 862 F.Supp. 632, 642 (D.Mass.1994). There is no requirement that each term appearing in the claim be expressly defined in the claim or specification, as long as "those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1470 (Fed.Cir. 1993). Further, "[i]f the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more. The degree of precision necessary for adequate claims is a function of the nature of the subject matter." *Miles Labs., Inc. v. Shandon Inc.,* 997 F.2d 870, 875 (Fed.Cir. 1993) (citations omitted); *see also Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624 (Fed.Cir.1985) (claims must be "as precise as the subject matter permits"). Ultimately, the question of whether a patent is void for indefiniteness is an issue of law. *See Amgen,* 927 F.2d at 1217.

Case law recognizes a number of legitimate sources of information about the meaning to persons skilled in the art of language used in claims. For example, the Federal Circuit observed in *Markman v. Westview Instruments* that evidence of meaning might be found in the claim itself, in the specification, and in the prosecution history. *Markman v. Westview Instruments Inc.,* 52 F.3d 967, 979–82 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court further noted that expert testimony could be a useful source of information regarding the meaning of language and its familiarity to persons skilled in the art. *Markman,* 52 F.3d at 979–82. Other useful sources of information include such extrinsic evidence as the inventor's testimony, dictionaries

(both general and specialized), and learned treatises. *Id.* Indeed, it has been pointed out that a patentee may be his own lexicographer, *id.* at 980, meaning that he may, within reason, define words any way he wishes.

 Implicit in cases such as *Markman* is the principle that a patent may be valid even though the meaning of certain claim language is not entirely free from ambiguity or instantly clear upon first reading. *See id.; see also Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1552–56 (Fed.Cir.1997) (court consults intrinsic and extrinsic evidence, both of which were inconclusive considered separately, to resolve uncertainty about meaning of claim language), *abrogated on other grounds, Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed.Cir.1998). Indeed, the principle has evolved that when patent claims are subject to more than one possible construction, they should, when reasonably possible, be interpreted so as to preserve their validity. *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed.Cir.1996). *Accord ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed.Cir.1984) ("[c]laims should be so construed, if possible, as to sustain their validity.")

 As is true with any challenge to patent validity, the patentee is entitled to the benefit of the presumption of validity found in 35 U.S.C. § 282. The burden is upon the challenger to prove invalidity by clear and convincing evidence, *e.g., Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed.Cir.1986), defined as evidence "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed.Cir. 1988) (citing *State of Colorado v. State of New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984)). Thus, it is incumbent in this case upon Apple to prove by clear and convincing evidence that, tak-ing into account both intrinsic and extrinsic evidence, the meaning of the phrase "higher level event" is not sufficiently clear to persons skilled in the art to apprise potential competitors of the limits of Articulate's invention. If Apple fails to present such proof as part of its prima facie case, there is no burden on Articulate to come forward with any contrary evidence, and Apple's motion for summary judgment must be denied.

## II. The Summary Judgment Record

 Apple points to several types of evidence in the summary judgment record to support its position that the term "higher level events" is indefinite.

First, it relies on the opinion of Dr. Alexander I. Rudnicky. *Declaration of Dr. Alexander I. Rudnicky in Support of Apple's Motion for Summary Judgment that Articulate's Patent is Invalid for Indefiniteness* ("Rudnicky Decl."), Docket 139. Apple describes Dr. Rudnicky in its memorandum as "an expert programmer who has considerable experience in developing voice recognition software...." Def.'s Mem., Docket No. 138, at 4. There are at least two problems with Dr. Rudnicky's Declaration, however: first, Dr. Rudnicky does not appear to be qualified to render an opinion as someone skilled in the relevant art; and, second, his opinion is largely conclusory and uninformative.

Considering first the issue of qualifications, Dr. Rudnicky states that he "earned a Ph.D. . . . from Carnegie–Mellon University in 1980 and a B.Sc. from McGill University in 1975." Rudnicky Decl. at ¶ 2. Tellingly, however, he does not state the fields in which he earned his degrees. He does attach his resume to his Declaration, however, and his resume makes clear that Dr. Rudnicky earned his degrees exclusively in the field of psychology, not computer science. Ex. A attached to Rudnicky Decl. at 1–2. Dr. Rudnicky further states that he has "performed research in the area of speech since 1975" and has

"been involved in speech recognition since 1981," where he worked "on the problem of lexical access in a knowledge-based speech recognition system." Rudnicky Decl. at ¶ 3. Neither in the Declaration nor in the resume, however, does Dr. Rudnicky describe in any meaningful way his practical experience, if any, in computer programming. This gap in Dr. Rudnicky's qualifications should be contrasted with the statement by Apple's attorney at oral argument concerning the type of qualifications an expert should have in order to be considered skilled in the relevant art. There, counsel stated, in response to the question "How do you define the art for purposes of determining where the skill must lie?": "Well, the art is clearly software programming that uses operating systems to create application software. And someone who has experience in doing that at least three or four years, probably, and probably has a degree in computer science." Transcript ("Tr.") of Summary Judgment Hearing, April 16, 1998, Docket No. 179, at 185. It is clear that Dr. Rudnicky does not have a degree in computer science, and that he probably lacks the appropriate programming experience that Apple's counsel described. At the very least, Dr. Rudnicky did not make it clear in his Declaration or resume that he has such experience. Therefore, I am not persuaded that Dr. Rudnicky has the necessary qualifications to testify as to what a person skilled in the art would or would not understand about the meaning of the term "higher level events."

Putting aside the issue of qualifications, Dr. Rudnicky's Declaration uses such conclusory language that it is not helpful in determining what meaning, if any, someone skilled in the art would attribute to the phrase "higher level events." Specifically, the essence of Dr. Rudnicky's opinion is set forth in paragraphs 6–9 of his Declaration. Those paragraphs state in their entirety:

6. Claim 1 of the '303 patent introduces the phrase "higher-level event" as a term of art to delimit the class of events that the patent is intended to cover. In short, the phrase "higher-lever event" is ambiguous, and as such I am unable to understand the scope of the claimed invention.

7. The term "higher-level event" is not found anywhere in the '303 specification other than the claims itself, and is not defined anywhere. Nor was I able in my own efforts able to find the term "higher-level event" in any relevant documentation.

8. Specifically, the term "higher-level event" could rationally and reasonably be understood to mean multiple, at times mutually exclusive, things.

9. On the basis of the '303 patent, its prosecution history and existing terms of art, I fail to find an unambiguous meaning for the term higher-level event. As such, I can not ascertain the scope of the claimed invention. Nor would others of ordinary skill in the art be able to ascertain the scope of the invention.

Among the critical items omitted from this statement of opinion are the bases for Dr. Rudnicky's conclusion that the term "higher-level event" is ambiguous, a listing of the possible meanings the phrase might have, the specific sources Dr. Rudnicky consulted in his search for meaning, and the ways in which the various possible meanings of the phrase "higher-level events" might be "mutually exclusive." These omissions are particularly important in view of the principle that claims subject to more than one possible interpretation should be read if reasonably possible to preserve their validity. *See Modine*, 75 F.3d at 1557.

The conclusory nature of the Declaration is not its only problem, however. Dr. Rudnicky states that he was unable to find the term in any "relevant documentation." Rudnicky Decl. at ¶ 7. In fact, Apple's own "Inside Macintosh" software manuals, since 1991, have used and defined the term

"high level event" and have expressly contrasted that phrase with the term "low level event." Attached as Ex. C to *Articulate's Opposition to Apple's Motion for Summary Judgment that Articulate's Patent is Invalid for Indefiniteness* ("Pl.'s Opp."), Docket No. 161, 5–3 to 5–10. Presumably, although the manual does not use the term "higher," as distinguished from "high," level event, a high level event is one that is higher than a low level event.[1] It is reasonable to infer that persons who write software for Apple computers would be familiar with the manual and would routinely review its contents. Dr. Rudnicky was either unaware of this critical documentation or, in describing the futility of his search for meaning, he is making an excessively fine distinction between the phrase "high level event" and the phrase "higher level event." *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547 (Fed.Cir.1984) (in rejecting challenge on indefiniteness grounds to the phrase "close proximity," court cautions against turning construction of a patent "into a mere semantic quibble that serves no useful purpose").[2]

Nor is "Inside Macintosh" the only Apple documentation in which the term high- or higher-level events appears. In December 1996, some nine months before Dr. Rudnicky filed his Declaration, Apple served supplemental responses to Articulate's Interrogatory No. 4. Attached as Ex. E to Pl.'s Opp. That interrogatory essentially asked Apple to explain its contention that its product, PlainTalk, did not infringe the '303 patent. In its response, Apple stated, *inter alia*, that the '303 file history "contains a reference to a definition of higher level events that serves to limit the claims of the patent." *Id.* at 6. Apple also provided as Exhibit A to its supplemental response a claim chart that compared the claims of the '303 patent to the corresponding elements of PlainTalk. In doing so, it used the term "higher level event" frequently and without apparent uncertainty or confusion. For example, at the second page of its claim chart, after noting that the '303 patent referred to "higher level events," Apple stated that "[a]ny higher level AppleEvent events that are generated are posted to the appropriate open application OS High Level Event Queue before being passed to the appropriate open application Application Event Queue." Two paragraphs later, Apple wrote: "When the speech recognition portion (including the portion known as Speakable Items) of the PlainTalk application is running on a Macintosh personal computer, some of the voiced utterances are converted into higher level AppleEvent events." It then went on to state: "These higher level AppleEvent events are *not* posted to the OS Event Manager Queue (as are disk, mouse and keyboard type events), but rather, *are* posted to the OS High Level Event Manager Queue without first converting the voiced utterances into the format of keyboard signals and are then passed to the appropriate open application Application Event Queue." Claim Chart, p. 2. In all these instances, and in many others in the claim chart with which Dr. Rudnicky was apparently unfamiliar, Apple seemed quite comfortable using the term "higher level events" and seemed to have no confusion or uncertainty about its meaning.

Finally, Dr. Rudnicky's claim that the prosecution history is not helpful in providing a meaning for the term "higher level event" is questionable. *See* Rudnicky Decl. at ¶¶ 5, 7. The history reveals that

---

1. As discussed below, the inventor of the '303 patent did not deem there to be any difference in meaning between the term "high level event" and the term "higher level event."

2. Admittedly, Articulate only adds to the confusion when one of its lawyers denies in correspondence to Apple's counsel that Articulate

equates high and higher level events, and another of its lawyers claims at oral argument that the two are indeed the same. *Compare* Letter of Nov. 4, 1997 from Jolynn M. Lussier to Christopher N. Olsen, attached as Ex. B to Def.'s Reply Mem., Docket No. 173, *with* Tr. at 169–70, 179.

the prosecuting attorney provided to the patent examiner some concrete examples of high level events after the examiner had twice rejected Articulate's earlier formulations of Claim 1. He stated: "Examples (among a wide variety of instances) of higher level events are given in the specification at page 12, lines 28 *et seq.*" Ex. C attached to *Declaration of Christopher N. Olsen in Support of Apple's Motion for Summary Judgment that Articulate's Patent is Invalid for Indefiniteness* ("Olsen Decl."), Docket No. 140, 000642. In the patent as issued, those examples appear at page 11, lines 54–57, and include: "drawing a string onto the screen, window zooming, moving windows to the front and back of the screen, and polling the status of the mouse button." Since a patentee is entitled to serve as his own lexicographer, Dr. Rudnicky, assuming he saw these examples, would not have been justified in disregarding them or downplaying their significance.[3]

Taking all the foregoing into account, Dr. Rudnicky's Declaration does not clearly and convincingly establish a prima facie case for the invalidity, on grounds of indefiniteness, of the '303 patent.

The second type of evidence upon which Apple relies in its attempt to establish a prima facie case that the '303 patent is void for indefiniteness is deposition testimony by two members of Articulate's development team, Thomas Firman ("Firman") and Timothy John Crawford Morgan ("Morgan"). We will consider each separately.

Firman is identified in the '303 patent as the inventor. It is important to note, however, that by the time the final patent application had been filed in December 1993, Firman had been gone from Articulate for at least three years, having taken a position at a company called Authorware in approximately 1990. Firman Dep. at 32. Thus, Firman was no longer working at Articulate or on the invention embodied in the '303 patent when, in 1991, Apple first issued its software manuals defining and describing the differences between low and high level events. *See id.* at 91. When portions of Firman's deposition testimony are read out of context, it appears that Firman was confused about two things: the way in which Apple, as distinguished from programmers such as himself and computer scientists generally, defined "high level events," and the relationship between high level events and higher level events. In context, however, it is clear that Firman, a person clearly skilled in the art, understood what high level events were, was under the firm impression that the term high level events was widely used and generally understood within the computer science field, and did not think that there was a distinction between high and higher level events.

The excerpts from Firman's deposition that Apple takes out of context begin at page 94. There, Firman is asked to state the contexts in which the phrase higher level events appear. He gives three such contexts: in Apple documentation, in "general computer science theory," and in Articulate's patent application. He is then asked a series of questions about how Ap-

---

**3.** In fairness to Dr. Rudnicky, the patent refers to these examples as types of "high level commands," rather than as high (or higher) level events. The summary judgment record in this case is unclear as to what the precise relationship is between high level commands and high or higher level events. On the one hand, the inventor of the '303 patent testified at his deposition that high level commands are not high level events. *Deposition upon Oral Examination of Thomas Firman* ("Firman Dep."), attached as Ex. G. to Pl.'s Opp., at 139–140. On the other hand, attorneys for Articulate observed at oral argument that even though a high level command is not, *per se*, a high level event, a high level event is an event that is generated by a high level command. Tr. at 178. Thus, it is perfectly reasonable for the prosecuting attorney, acting as his own lexicographer, to use examples of events generated by high level commands to illustrate what a high level event is. That, according to the prosecution history, is what Articulate did here, to the apparent satisfaction of the patent examiner.

ple uses the term in its documentation. He responds: "I can't answer that. I haven't looked at the documentation in years, just literally years. So I don't know how they use it." *Id.* at 94. He then offers to speculate about how Apple would use that term. Eventually, while still discussing the context in which Apple might use the term, he says, "I'm having problems with this because it's a totally arbitrary term. And when you use the term, you have to use the term in the context of what you're trying to describe. If I were to use the term, I would probably use it differently than the documentation that comes from Apple. And so I'm just having a little trouble trying to speculate what they would use it for." *Id.* at 95–96. Based upon this exchange, which involved Firman's attempt to speculate about what Apple meant when it used the phrase "high level event" in documentation Firman had not seen for years, Apple concludes that "[i]f the inventor himself struggles mightily to understand the meaning of the phrase when it is bereft of any clarifying language or descriptive context, then clearly no other individual or potential competitor could possibly be expected to ascertain the meaning or scope of the claims either." Def.Mem. at 15. As Firman's continued deposition illustrates, however, this is not a proper conclusion to draw.

Apple's counsel subsequently asked Firman specific questions about what the terms high and higher level events meant to him and to others within the field of computer science generally. Here, he had no difficulty defining the terms or confirming that they mean the same thing and that they have a well and widely understood meaning within the field of computer science. For example, when he was asked to state his own understanding of the term "higher level event," he stated that it would be "an event that actually cannot be duplicated by a single function at a lower level. So it would be a compound event. It would be an event that requires logic. It would be an event that requires—that

requires parameterization of input, et cetera. That would be my definition of a higher level event." Firman Dep. at 96. He followed up this answer by giving various examples of higher level events, such as "launching an application," "Z-ordering Windows," and "responding to a dialogue box." *Id.* at 97. He was then asked if he had had occasion to use the term "higher-level event," and he responded: "I have used higher-level event. Yes." *Id.* He went on to explain that he used the term "to try and differentiate in the work we were doing with Voice Navigator between low-level events and higher level events." *Id.* at 98. At that point, he was asked whether, in his mind, the term higher-level event meant the same thing as high level event, and he said it did. *Id.* Thus, there is no question that the term "higher level event" was meaningful to Firman, a person skilled in the art, and that he equated the two terms, high level event and higher level event.

The questioning then moved into a different area—the extent to which the phrase higher level events was used within the computer science field in general. Firman was asked "what was the context of that," and he replied, "Definitely outside of the realm of Macintosh." *Id.* at 101. He was then asked what the meaning of the term was within "general computer science theory." He replied: "Differentiation between a driver-level event and an application level event typically." *Id.* at 101–102. He elaborated: "Generally speaking, in computer science, anything low-level is hardware-related or driver-related. Anything high level is application-related or middleware-related." A few questions later, Firman was asked whether there was "some accepted reference in the field of general computer science theory where I might find an entry for higher-level event?" Firman stated, "I'm sure there is. I couldn't cite it for you." *Id.* at 102. Thus, it is clear that Firman, a person skilled in the art, was of the opinion that the term higher-level events was not only

well understood by himself and other members of the Voice Navigator development team, but also within the field of computer science generally. Even if Apple had made a prima facie case for the indefiniteness of this term—and it has not—this testimony would at least raise an issue of fact for the court to decide after hearing all the evidence. In other words, Firman's testimony, taken in context, is itself sufficient to defeat Apple's motion for summary judgment.

The final type of evidence on which Apple attempts to rely to establish its claim of indefiniteness is the deposition testimony of development team member Timothy Morgan. *Deposition of Timothy John Crawford Morgan* ("Morgan Dep."), attached as Ex. H to Pl.'s Opp. Morgan was asked to review Apple's Inside Macintosh manual and to define high level events as used in that documentation. He responded by stating where within Apple's documentation that definition could be found. He was then asked to give an example of a higher level event, and he responded that he was not familiar with that term, as distinguished from the term high level event. It seems clear from the context in which the question was asked that Morgan was responding on the basis of the documentation before him, which only uses the term high level event and not higher level event. In fact, after reviewing the Apple documentation, he stated: "I cannot see any reference to higher-level events in this documentation." Morgan Dep. at 147. He also testified: "You're making a distinction between high-level events and higher-level events, and I am not familiar with that distinction." *Id.* at 146. At best, this testimony is confusing. What Morgan seems to be saying is that he, like Firman, is not familiar with any distinction between the term high level event and the term higher level event as far as the Apple documentation is concerned. It is less clear whether he would, if asked, have difficulty interpreting the phrase higher level event within the context of the '303 patent. In any event, Morgan's uncertain-

ty, standing alone, does not clearly and convincingly prove that the '303 patent is invalid for indefiniteness. Even if it were evidence of indefiniteness, it would have been sufficiently refuted by Firman's testimony to give rise to an issue of fact sufficient to defeat summary judgment.

For all the foregoing reasons, Apple has failed to make out a prima facie case of indefiniteness. Further, even if it had done so, there is sufficient contrary evidence, including Firman's testimony, the prosecution history, Apple's own software manual, and Apple's interrogatory response and claim chart, to raise a genuine issue of fact as to whether persons skilled in the art would understand the term "higher level events," within the context of the specification. Apple's motion for summary judgment should accordingly be **DENIED.**

### III. Conclusion

For all the foregoing reasons, I recommend that Apple's motion for summary judgment on the ground of indefiniteness be **DENIED.**

### IV. Important Notice of Right to Object and Waiver of Right to Appeal for Failure to do so Within Ten Days

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate

review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete*, 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980); *see also Thomas v. Arn*, 474 U.S. 140, 148–149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

July 21, 1999.